STEVEN RIZZI, *Admitted Pro Hac Vice*
  srizzi@foley.com
RAMY HANNA, *Admitted Pro Hac Vice*
  rhanna@foley.com
**FOLEY & LARDNER LLP**
90 PARK AVENUE
NEW YORK, NY 10016-1314
TELEPHONE:  (212) 682-7474
FACSIMILE:   (212) 687-2329

BARRY G. FELDER, CA Bar No. 175658
  bgfelder@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET
SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE:  (213) 972-4500
FACSIMILE:   (213) 486-0065

Attorneys for Defendants
LSI Corporation and Avago Technologies U.S. Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CARNEGIE MELLON UNIVERISTY,<br><br>                              Plaintiff,<br><br>       vs.<br><br>LSI CORPORATION AND AVAGO TECHNOLOGIES U.S. INC. ,<br><br>                              Defendants. | Case No. 3:18-cv-04571-JD<br><br>**DEFENDANTS LSI CORPORATION'S AND AVAGO TECHNOLOGIES U.S., INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO F.R.C.P 12(B)(6)**<br><br>Date:           November 8, 2018<br>Time:          10:00 a.m.<br>Courtroom:  11 – 19th Floor<br>Judge:         Hon. James Donato |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on November 8, 2018, at 10:00 a.m., or as soon thereafter as may be heard, in Courtroom 11 of the above-captioned Court, located at the United States Court House, 450 Golden Gate Avenue, 19th floor, San Francisco, CA 94102, defendants LSI Corporation and Avago Technologies, U.S., Inc. (collectively, "Defendants"), by their attorneys, will move this Court for an order dismissing the complaint of Plaintiff Carnegie Mellon University ("Plaintiff" or "CMU") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in support thereof, all pleadings and papers on file in this action, and such other and further matters as the Court may consider.

**STATEMENT OF THE ISSUES**

Defendants request that CMU's Complaint be dismissed for failure to state a claim upon which relief can be granted. In particular, Defendants seek dismissal of CMU's direct and indirect infringement claims for failure to satisfy the pleading standards set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................... 1

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 1

III. LEGAL STANDARD ..................................................................................................... 3

IV. ARGUMENT .................................................................................................................. 4

    A. *CMU's Direct Infringement Claims As To All Exemplary Accused Products Should Be Dismissed* ............................................................................................... 4

    B. *At A Minimum, CMU's Direct Infringement Claims As To The Simulators Should Be Dismissed* ............................................................................................................ 9

    C. *CMU's Indirect Infringement Claims Should Be Dismissed* ......................................... 10

V. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ............................................................................................... 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................... 3, 4

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
    Case No. 15-cv-05469-EDL, 2016 U.S. Dist. LEXIS 60211 (N.D. Cal. Mar. 9, 2016) ......... 9

*Avago Techs. Gen. IP (Sing) PTE Ltd. v. Asustek Computer, Inc.*,
    Case Nos. 15-cv-04525-EMC and 16-cv-00451-EMC, 2016 U.S. Dist. LEXIS 55655
    (N.D. Cal. Apr. 25, 2016) ...................................................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 3, 4

*Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 U.S. Dist. LEXIS
    83715, 2009 WL 2972374 (N.D. Cal. Sept. 14, 2009) .......................................................... 4

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................................... 3

*Immersion Corp. v. Fitbit, Inc.*,
    313 F. Supp. 3d 1005 (N.D. Cal. 2018) ................................................................................. 3

*Jenkins v. LogicMark, LLC*,
    Civil Action No. 3:16-CV-751-HEH, 2017 U.S. Dist. LEXIS 10975 (E.D. Va. Jan.
    25, 2017) ................................................................................................................................ 4

*Khoja v. Orexigen Therapeutics, Inc.*,
    No. 16-56069, 2018 U.S. App. LEXIS 22371 (9th Cir. Aug. 13, 2018) ............................ 3, 5

*Lazy Y Ranch LTD v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ................................................................................................. 3

*UNILOC USA, Inc. v. Apple Inc.*,
    No. C 18-00359 WHA, 2018 U.S. Dist. LEXIS 75225 (N.D. Cal. May 2, 2018) ..... 1, 4, 8, 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 1, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Carnegie Mellon University's ("CMU") patent infringement complaint against LSI Corporation and Avago Technologies, U.S., Inc. (collectively "Defendants") should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because it fails to allege "how or why each claim limitation is met by the accused products." *UNILOC USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 U.S. Dist. LEXIS 75225, at *8 (N.D. Cal. May 2, 2018) ("[T]his Court . . . requires a patent infringement plaintiff to plead factual allegations showing how or why each claim limitation is met by the accused products."). Instead, CMU resorts to threadbare, general descriptions of the technology underlying the Asserted Patents, and makes conclusory and implausible assertions regarding the manner by which Defendants' accused products purportedly operate. Consequently, CMU's complaint should be dismissed in its entirety. At a minimum, the complaint should be dismissed insofar as it alleges infringement by "Simulators," as defined in the complaint.

**II.   FACTUAL BACKGROUND**

On July 27, 2018, CMU sued Defendants for alleged infringement of the United States Patent Nos. 6,201,839 ("'839 Patent") and 6,438,180 ("'180 Patent") (Exhibits 3 and 4 to the Complaint, Docket Index Nos. 1-3 and 1-4) (collectively "Asserted Patents"). The Asserted Patents have an earliest possible priority date of May 9, 1997. CMU alleges that the purported invention of the Asserted Patents "relates generally to a method of computing branch metric values in a detector, such as a Viterbi detector." Docket Index No. 1 at ¶ 56. CMU identifies dependent method claim 2 of the '180 Patent (which depends from claim 1 of the '180 Patent) and method claim 4 of the '839 patent as the exemplary asserted claims ("Exemplary Claims"). Docket Index No. 1 at ¶¶ 62-64, 113, 121-122, 175, 185. The Exemplary Claims are set forth below for the Court's convenience.

> Claim 1 of the '180 Patent (not asserted):
> A method of determining branch metric values in a detector, comprising:
> receiving a plurality of time variant signal samples, the signal samples having one of signal-dependent noise, correlated noise, and both signal dependent and correlated noise associated therewith;
> selecting a branch metric function at a certain time index;  and
> applying the selected function to the signal samples to determine the metric values.

Claim 2 of the '180 Patent:
>   The method of claim 1, wherein the branch metric function is selected from a set of signal-dependent branch metric functions.

Claim 4 of the '839 Patent:
>   A method of determining branch metric values for branches of a trellis for a Viterbi-like detector comprising:
>   selecting a branch metric function for each of the branches at a certain time index from a set of signal-dependent branch metric functions; and
>   applying each of said selected functions to a plurality of signal samples to determine the metric value corresponding to the branch for which the applied branch metric function was selected, wherein each sample corresponds to a different sampling time instant.

CMU's complaint purports to provide a discussion of certain challenges associated with the methods used in the storage and retrieval of data on magnetic media, such as correlated and signal-dependent noise. CMU then discloses that prior art Viterbi detectors were used as an early method of accounting for noise issues in magnetic disks. Docket Index No. 1 at ¶¶ 41-42. CMU concedes that known Viterbi detectors used branch metric functions to determine branch metric values for branches within a trellis structure. Docket Index No. 1 at ¶¶ 43-44. Figure 4 of the Asserted Patents (shown below and duplicated in paragraph 43 of the Complaint) is an example of the trellis structure and branches employed by a Viterbi detector. CMU then correctly avers that using a Viterbi detector, the "likely sequence of data is usually selected as the one corresponding to the path whose path metric value has the lowest value." Docket Index No. 1 at ¶ 44.



In attempting to distinguish its purported invention over known Viterbi detectors that it acknowledges dealt with noise, CMU alleges that such Viterbi detectors "ignored the correlated and signal-dependent attributes of the media noise." Docket Index No. 1 at ¶ 51. And because the Exemplary Claims require a selection of a branch metric function from a "set of signal-dependent

1 branch metric functions," CMU alleges that equation 13 of the Asserted Patents (pasted below) provides
2 such disclosure.  Docket Index No. 1 at ¶¶ 56-57.

$$M_i = \log\frac{\det C_i}{\det c_i} + \underline{N}_i^T C_i^{-1} \underline{N}_i - n_i^T c_i^{-1} n_i$$

5 Regarding its identification of accused products, CMU alleges that the claimed methods are
6 implemented in "HDD Chips sold under the tradename TrueStore and computer-implemented detectors
7 that execute simulation code files."  Docket Index No. 1 at ¶ 79.  CMU refers to the actual "TrueStore"
8 products (of which it identifies three versions of Defendants' "Spyder" product as examples) as "the
9 Accused Chips" and the "computer-implemented detectors" as "Simulators."  In other words, CMU
10 accuses actual products of infringement (the Accused Chips), as well as software code running on
11 standard computers (the Simulators).  Collectively, CMU refers to the Accused Chips and the Simulators
12 as the "Exemplary Accused Products."  *Id.*

## III.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  In deciding a motion to dismiss, the "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  However, the court is not required to accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  Similarly, the Court "is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, No. 16-56069, 2018 U.S. App. LEXIS 22371, at *41 (9th Cir. Aug. 13, 2018) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005, 1015 (N.D. Cal. 2018) ("Mere conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.") (internal quotation omitted) (citing *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

Thus, the Court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." *Id.* Though "[t]he plausibility requirement is not akin to a 'probability requirement,'" a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." *Id.* at 678 (internal quotation marks omitted) and 679. Simply put, plaintiffs must "'nudge[] [their] claims' … 'across the line from conceivable to plausible,'" *citing Twombly*, 550 U.S. at 570. *Id.* at 680.

In addition, for complaints pleading patent infringement, "this Court . . . **requires a patent infringement plaintiff to plead factual allegations showing how or why each claim limitation is met by the accused products**." *UNILOC USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 U.S. Dist. LEXIS 75225, at *8 (N.D. Cal. May 2, 2018) (emphasis added); *see also Atlas IP LLC v. Pac. Gas & Elec. Co.*, Case No. 15-cv-05469-EDL, 2016 U.S. Dist. LEXIS 60211, at *7-8 (N.D. Cal. Mar. 9, 2016) (citing *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 U.S. Dist. LEXIS 83715, 2009 WL 2972374, at *2 (N.D. Cal. Sept. 14, 2009) as proper support for the proposition that "simply reciting some of the elements of a representative claim and then describing generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements, is insufficient." ); *Jenkins v. LogicMark, LLC*, Civil Action No. 3:16-CV-751-HEH, 2017 U.S. Dist. LEXIS 10975, at *6-7 (E.D. Va. Jan. 25, 2017) (dismissing complaint for failure to "identify with any particularity **how each allegedly infringing feature of the accused products infringes any of the named patents**, either literally or under the doctrine of equivalents" and requiring that "before filing a complaint, **counsel must ascertain exactly what claims should [be] alleged to be infringed and how they are infringed.**") (citations omitted) (emphasis added).

IV. **ARGUMENT**

   A. *CMU's Direct Infringement Claims As To All Exemplary Accused Products Should Be Dismissed*

CMU's complaint does not provide any detail that would allow the Court to make an inference that its claim is plausible. Specifically, CMU does not provide the required details of *how or why each claim limitation is met by the accused products.* Instead, in describing how the Exemplary Accused Products

supposedly directly infringe the Exemplary Claims, CMU merely repeats the claim language of the Exemplary Claims, with no discussion of the Exemplary Accused Products specifying how each claim limitation is satisfied. Specifically, in the section of its complaint headed "Defendants' Unauthorized Use of the Methods Claimed in the Patents," CMU does not compare any accused product to the actual claim limitations, but simply generally states that the Exemplary Accused Products:

- "Receiv[e] a plurality of time variant samples, e.g., signal samples of the readback signal, that inherently have signal-dependent, correlated noise;"
- "Select[] a branch metric function from a set of signal dependent branch metric functions corresponding to the branch of the trellis at a certain time index;" and
- "Apply[] the selected signal dependent branch metric function to the plurality of signal samples to determine the branch metric value of the branch for which the applied branch metric value was selected."

Docket Index No. 1 at ¶ 114.

The allegations in the subsequent infringement counts are equally generic, as CMU simply states in conclusory fashion that the Exemplary Accused Products directly infringe when operated. Docket Index No. 1 at ¶¶ 174-175, 185-186. These generic assertions do not satisfy the requirement of pleading "how or why" the Exemplary Accused Products satisfy each claim limitation, such as, among others, the "selecting a branch metric function," or the "set of signal-dependent branch metric functions." The Court need not and should not accept such conclusory allegations as true. *Khoja*, 2018 U.S. App. LEXIS 22371, at *41.

Nor does CMU's allegation that "Banks of data-dependent filters noise predictive filters, such as those described in Exhibits 11, 12 and 13, are used in the Viterbi branch metric calculations designed by Defendants and used in their TrueStore line of Exemplary Accused Products" (Docket Index No. 1 at ¶ 106) save its deficient pleading, because it is neither reasonable nor plausible. Exhibits 11, 12 and 13 are two patent applications (one assigned to Broadcom Corp. and the other to LSI Corp.), and an issued patent assigned to LSI Corp., respectively. However, CMU alleges no facts that plausibly connect any of the subject matter described in these exhibits to the Exemplary Accused Products. For example, CMU does not allege that any of the Accused Products are marked with the number of the issued patent. Nor does CMU allege that any of the Exhibits themselves indicate that the inventions or technology disclosed therein are used in any of the Exemplary Accused Products.

It appears that CMU simply conducted a search of all patents and published patent applications owned by the Defendants for disclosures that it contends correspond to the Exemplary Claims.  The implausibility of CMU's allegations is best exemplified by the Broadcom Corp. patent application of Exhibit 11.  When that application was filed and later published on August 14, 2008, Broadcom Corp. had not yet even been acquired by Avago, meaning that it was an entirely different corporate entity than that responsible for the Exemplary Accused Products (Avago subsidiary LSI Corp.).  CMU fails to allege any facts that plug this gaping hole, and does not explain why it contends the subject matter of the Broadcom Corp. patent application found its way into products developed by a different company.  Thus, there is no plausible basis to believe that the disclosure of the application in any way relates to the Exemplary Accused Products.

CMU's reliance on the LSI patent and patent application of Exhibits 12 and 13, respectively, is equally implausible.  For example, CMU does not allege that any of the named inventors played any role with respect to the Exemplary Accused Products, much less that the portions it relies on were incorporated into the Exemplary Accused Products.  That CMU alleges, without any basis (from the actual Exhibits or otherwise), that Defendants' Exemplary Accused Products use "Banks of data-dependent filters" as disclosed in these Exhibits is thus unreasonable and implausible.

CMU's other substantive allegations relating to how or why the Exemplary Accused Products satisfy the limitations of Exemplary Claims are equally deficient, because CMU actually *avoids* discussing the claim limitations.  Indeed, instead of addressing the actual claim language, CMU focuses on buzz words found in a disparate array of documents, such as "pattern-dependent filter" and "DDNP."  CMU makes little effort to explain the meaning of these terms and instead makes the implausible and conclusory assertion that any use of whatever technology is described by such terms is "covered/claimed by the Patents."  *See e.g.* Docket Index No. 1 at ¶¶ 90, 92.  But CMU offers no reasoning as to how or why that is the case.  And as with Exhibits 11-13, CMU again fails to plead any plausible basis to connect the technology underlying such terms to the actual Exemplary Accused Products.  For completeness, Defendants address each of these conclusory allegations below:

(i)      Alleged Statements By Dr. Lee (Paragraphs 83, 85, 87-89, 91)

CMU alleges that:

- "in late 2009" Dr. Lee, an LSI employee, "told Prof. Kavcic that LSI used Prof. Kavcic's 'detector.'"  Docket Index No. 1 at ¶ 83.
- in a "September 20, 2010" email, Dr. Lee wrote that LSI "cannot run channels w/o Kavcic's DDNP algorithms."  Docket Index No. 1 at ¶ 85.
- in 2012, Dr. Lee gave a presentation to the Chinese American Information Storage Society (CAISS) that dealt with "pattern-dependent filter[s]."  Docket Index No. 1 at ¶¶ 87-89.
- in that same 2012 presentation, Dr. Lee presented a slide that contained a block titled "Equalizer & DDNP."  Docket Index No. 1 at ¶ 91.

Setting aside issues of veracity, reliability and accuracy for purposes of this Motion, conspicuously absent from CMU's averments are (1) any allegation that Dr. Lee had any awareness of the Asserted Patents or their claims, and thus any basis to connect statements referencing Dr. Kavcic to the Exemplary Claims; (2) any actual analysis or information concerning the Exemplary Accused Products and how they operate; (3) any information tying the statements to the Accused Chips or the Simulators. Therefore, it is implausible that these statements could be understood to provide an analysis of how or why the Exemplary Accused Products infringe the Exemplary Claims.

Highlighting the implausibility and unreasonableness of its allegations, CMU makes the baseless allegation that "'[p]attern-dependent filter' in this context in the industry refers to a set of FIR filters that is used to implement a set of signal-dependent (or 'pattern-dependent') branch metric functions, which is covered by the Patents" (Docket Index No. 1 at ¶ 90), and that, as used in Dr. Lee's slide, "'DDNP' refers to 'data dependent noise prediction,' an industry term for a set of signal-dependent branch metric functions, **which are claimed by the Patents**."  *Id*. at ¶ 92 (emphasis added).  Setting aside the lack of any connection to the Exemplary Accused Products, under CMU's logic, any time any person in the industry speaks the buzz words "DDNP" or "pattern-dependent filter," such person can only be referring to the methods claimed in the Exemplary Claims.  Such conclusory allegations are not plausible because, among other reasons, the Exemplary Claims do not use either "pattern-dependent filter" or

"DDNP." Much more is required for CMU to satisfy its pleading obligations. *UNILOC USA,* 2018 U.S. Dist. LEXIS 75225, at *8.

(ii) <u>Alleged Statement by Dr. Miladinovic (Paragraph 94)</u>

CMU alleges that Dr. Miladinovic, an employee of LSI from 2008-2010, stated that he "'[i]mprov[ed] DDNP BCJR implementation.'" Docket Index No. 1 at ¶ 94. CMU then alleges that "BCJR" is "a type of soft-output Viterbi algorithm described in the '180 Patent." Docket Index No. 1 at ¶ 95. As with Dr. Lee's statements, CMU does not allege any link to any of the Exemplary Accused Products, and offers no explanation as to how the Exemplary Accused Products operate or would infringe the Exemplary Claims. In addition, CMU's statements concede that BCJR is a "Viterbi algorithm" which, by CMU's own admission as discussed above, is not CMU's invention.

(iii) <u>Alleged Statement by Weijun Tan (Paragraph 94)</u>

CMU points to an alleged statement on Mr. Tan's LinkedIn page that he "'developed … data dependent noise prediction filter' while at LSI from 2004 – 2017." Docket Index No. 1 at ¶ 94. Just like Drs. Lee and Miladinovic, CMU fails to allege that Mr. Tan's statements are connected to any of the Exemplary Accused Products, and even if they were, offers no explanation as to how or why the Exemplary Accused Products operate or would infringe the Exemplary Claims.

(iv) <u>Alleged Agere Presentation (Paragraphs 97-98)</u>

CMU points to Exhibit 10, an alleged presentation by Agere that CMU found on the internet. Docket Index No. 1 at ¶ 97. Here again, CMU relies on phrases from the presentation that purportedly show that "Agere introduced 'Data-dependent NPML' in its 'Redtail' read channel in around September 2003." Docket Index No. 1 at ¶ 98. CMU then makes the leap that the technology referred to by such term "are claimed by the Patents." *Id.* As a threshold matter, CMU again offers no basis for its conclusory allegation that any "Data-dependent NPML" is somehow within the scope of the claims. Moreover, as with the other statements above, CMU does not allege any facts that link this document to any of the Exemplary Accused Products (such as the Spyder product) and offers no explanation as to how the Exemplary Accused Products operate or why they would infringe the Exemplary Claims. Moreover, CMU's reliance on the Redtail product is faulty, and cannot support its burden of plausibility

and reasonableness, because CMU does not even allege that all of the Exemplary Accused Products operate in the same manner as the Redtail product.

In conclusion, as with *Atlas IP*'s deficient complaint, CMU's "complaint recites only some of the elements of the [] asserted claim[s], and provides only a threadbare description of the alleged abilities of the accused device." *Atlas IP LLC*, 2016 U.S. Dist. LEXIS 60211, at *8. Such recitation is simply insufficient to satisfy the requirement that "a patent infringement plaintiff [] plead factual allegations showing how or why each claim limitation is met by the accused products." *UNILOC USA,* 2018 U.S. Dist. LEXIS 75225, at *8. CMU's improper reliance on patent applications, an issued patent, and random statements from individuals or presentations do not shed any light on why or how the Exemplary Accused Products allegedly satisfy the Exemplary claims.[1]

### B. At A Minimum, CMU's Direct Infringement Claims As To The Simulators Should Be Dismissed

CMU's allegations as to Defendants' Simulators are particularly deficient and mandate dismissal. As discussed above, CMU divided the Exemplary Accused Products into two categories: (1) the Accused Chips from the TrueStore line of products, and (2) the Simulators. Even if accepted, CMU's substantive technical allegations (which, as discussed above, are insufficient for any purpose) all relate solely to the Accused Chips, i.e., the actual physical products. Docket Index No. 1 at ¶¶ 79-131.

CMU does not offer any separate allegations as to how or why the Simulators infringe the Exemplary Claims, and thus its allegations regarding the Simulators are facially deficient even were the Court to conclude that the allegations as to the Accused Chips are sufficient. Thus, at a minimum, any direct infringement allegations against the Simulators should be dismissed.

---

[1] *Cf. Avago Techs. Gen. IP (Sing) PTE Ltd. v. Asustek Computer, Inc.*, Case Nos. 15-cv-04525-EMC and 16-cv-00451-EMC, 2016 U.S. Dist. LEXIS 55655 (N.D. Cal. Apr. 25, 2016). While this decision pertains to a related corporate entity, it is irrelevant to this Motion. Specifically, unlike CMU, Avago Techs. Gen. IP (Sing) PTE Ltd. ("Avago Techs") pled its allegations "upon information and belief," whereas CMU makes unqualified factual allegations that are implausible and unreasonable. In addition, the claims of the asserted patent in the *Avago Techs* case covered every instance of the presence of particular metadata used with specific formats of audio file types, whereas here, CMU concedes that its claims cannot cover every instance of the use of branch metric functions because Viterbi detectors preceded CMU's purported inventions.

### C. *CMU's Indirect Infringement Claims Should Be Dismissed*

Much like the direct infringement allegations, CMU's indirect infringement allegations should be dismissed for the same reasons. Paragraphs 115 and 116 of the Complaint regurgitate the same formulaic recitation of the claim language for indirect infringement as paragraph 114 does for direct infringement. The only difference is the prefatory language in those paragraphs relating to the legal standard for indirect infringement.[2] The actual reasoning in the infringement counts is equally generic as CMU simply states that the Exemplary Accused Products directly infringe when operated. Docket Index No. 1 at ¶¶ 177-178, 188-189. Thus, Defendants' positions with respect to direct infringement are equally applicable to CMU's indirect infringement allegations.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that CMU's Complaint be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated: October 4, 2018                                      **FOLEY & LARDNER LLP**


/s/ *Steven J. Rizzi*
Steven J. Rizzi
Attorney for Defendants

---

[2] Other paragraphs in the complaint relate to indirect infringement as well but those paragraphs deal with allegations concerning the requisite mental state and are not relevant to the issues raised by the instant motion.

**PROOF OF SERVICE Electronic Filing**

I HEREBY CERTIFY that on October 4, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the Electronic Service List for this case.

          */s/ Steven J. Rizzi*
          Steven J. Rizzi