STEVEN RIZZI, *Admitted Pro Hac Vice*
srizzi@foley.com
RAMY HANNA, *Admitted Pro Hac Vice*
rhanna@foley.com
**FOLEY & LARDNER LLP**
90 PARK AVENUE
NEW YORK, NY10016-1314
TELEPHONE: (212) 682-7474
FACSIMILE: (212) 687-2329

BARRY G. FELDER, CA Bar No. 175658
bgfelder@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET
SUITE 3500
LOS ANGELES, CA 90071-2411
TELEPHONE: (213) 972-4500
FACSIMILE: (213) 486-0065

Attorneys for Defendants
LSI Corporation and Avago Technologies U.S. Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

CARNEGIE MELLON UNIVERISTY,

Plaintiff,

vs.

LSI CORPORATION AND AVAGO TECHNOLOGIES U.S. INC.,

Defendants.

Case No. 3:18-cv-04571-JD

**DEFENDANTS LSI CORPORATION's AND AVAGO TECHNOLOGIES U.S. INC.'s REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6)**

Date: November 8, 2018
Time: 10:00 a.m.
Courtroom: 11 – 19th Floor
Judge: Hon. James Donato

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. CHMU DOES NOT SATISFY THE "HOW OR WHY" REQUIREMENT FOR THE CHALLENGED CLAIM LIMITATIONS .......... 2

A. CMU's Cited Authority Is Inapposite .......... 2

B. Defendants' Cited Authority Is Proper and Controlling .......... 4

C. CMU's Conclusory Recitation of the Claim Limitations Does Not Satisfy Its Pleading Obligations .......... 5

D. CMU's Direct Infringement Allegations Are Premised on Unwarranted Deductions and Unreasonable Inferences of Fact that Fail the Plausibility Test .......... 6

III. CMU'S RELIANCE ON THE UNIVERSITY OF MINNESOTA CASE IS INAPPOSITE .......... 9

IV. AT A MINIMUM, THE COMPLAINT SHOULD BE DISMISSED AS TO THE "SIMULATORS" .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABB Turbo Sys. AG v. TurboUSA, Inc.*,
774 F.3D 979 (Fed. Cir. 2014)....................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8

*Atlas IP LLC v. Pacific Gas & Electric Co.*,
Case No. 15-cv-05469-EDL, 2016 U.S. Dist. LEXIS 60211 (N.D. Cal. Mar. 9, 2016)....................4

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) ....................10

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
888 F.3D 1256 (Fed. Cir. 2018)....................4

*Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*,
CV 14-1430-LPS-CJB, 2015 WL 5725768 (D. Del. Sept. 29, 2015)....................3

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................7

*Jenkins v. LogicMark, LLC*,
Civil Action No. 3:16-CV-751-HEH, 2017 U.S. Dist. LEXIS 10975 (E.D. Va. Jan. 25, 2017) ....................4, 5

*Khoja v. Orexigen Therapeutics, Inc.*,
No. 16-56069, 2018 U.S. App. LEXIS 22371 (9th Cir. Aug. 13, 2018) ....................1

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)....................7

*Regents of the University of Minnesota v. LSI Corp.*,
Case No. 16-cv-2891, Dkt. 56 (D. Minn. June 29, 2017)....................9, 10

*Schneider v. Cal. Dep't. of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ....................10

*SimpliVity Corp. v. Springpath, Inc.*,
CV 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016)....................2

*UNILOC USA, Inc. v. Apple Inc.*,
No. C 18-00359 WHA, 2018 U.S. Dist. LEXIS 75225 (N.D. Cal. May 2, 2018)....................1, 2, 5, 6

*Vendavo, Inc. v. Price f(x) AG*,
Case No. 17-cv-06930-RS, 2018 Dist. LEXIS 48637 (N.D. Cal. Mar. 23, 2018) ....................5, 6

**Other Authorities**

Form 18 of the Federal Rules of Civil Procedure ........................................................................2

Rule 11 of the Federal Rules of Civil Procedure ................................................................6, 9, 10

Rule 12(b)(6) of the Federal Rules of Civil Procedure ..............................................................10

## I. INTRODUCTION

CMU's Opposition, Docket Index No. 39 ("Opposition") largely avoids addressing the specific, discrete arguments raised in Defendants' succinct motion that warrant dismissal of CMU's complaint. Specifically, CMU does not seriously contend that its complaint plausibly alleges "how or why [the 'selecting a branch metric function' or 'set of signal-dependent branch metric functions'] claim limitation[s are] met by the accused products." *UNILOC USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 U.S. Dist. LEXIS 75225, at *8 (N.D. Cal. May 2, 2018). The crux of Defendants' motion, as their opening brief made clear (Docket Index No. 35 at 4-9), is that the handful of allegations that arguably address the challenged claim limitations are based on nothing more than "unwarranted deductions of fact, or unreasonable inferences," which the Court is not required to accept as true. *Khoja v. Orexigen Therapeutics, Inc.*, No. 16-56069, 2018 U.S. App. LEXIS 22371, at *41 (9th Cir. Aug. 13, 2018). CMU's Opposition confirms that it relies almost entirely on sound bites plucked from random patent applications, a single patent, and other documents, and pleads no facts supporting a reasonable inference that any are connected to the relevant functionality of the Exemplary Accused Products, or refer to the specific algorithms of the claims identified in the complaint ("Exemplary Claims").

Indeed, CMU spends its 15-page Opposition[1] mostly regurgitating the allegations in its complaint, and perpetuating the false narrative that Defendants have "admitted infringement." In doing so, CMU also takes substantial liberties in its citations to authority, including improper use of ellipses and truncations in case quotations to mask the fact that many of the cases it relies upon do not actually support its arguments. For example, one of CMU's main arguments is that its allegations of direct infringement must be considered "as a whole," and it faults Defendants for separately addressing why each one is lacking. Opposition at 2, 11-12. However, each of the four cases CMU cites for this proposition was specifically addressing a challenge to the sufficiency of pleadings directed to an element of a claim that implicates the state of mind of the opposing party, such as knowledge in the context of willful infringement, intent in the context of inducement of infringement, and "guilty knowledge" in the context of a trade secret misappropriation claim. But Defendants' motion does not challenge the

---

[1] The Opposition originally filed was over 21 pages long. Defendants immediately pointed out to CMU that this was a violation of the Court's Standing Order, *see* Standing Order for Civil Cases Before Judge James Donato at ¶ 18, and in response CMU refiled an abridged version.

sufficiency of any of CMU's allegations bearing on state of mind, and this authority has no bearing on the direct infringement allegations that are the subject of the instant motion. Similarly, CMU significantly mischaracterizes Defendants' authority, including the *UNILOC* case, as discussed below.

To the extent CMU does address the actual arguments made by Defendants, its responses serve only to highlight the implausibility and unreasonableness of its pleading with respect to the challenged claim limitations. Indeed, CMU's Opposition impermissibly attempts to fill some of the holes in its pleading by relying on the outcome of its prior litigation against Marvell. However, it is well-established that CMU cannot rectify its deficient pleading through arguments and allegations in its Opposition.

In sum, when the rhetoric, strawman arguments and inapposite authority are stripped from its Opposition, the deficiencies in CMU's complaint are laid bare, and the "unwarranted deductions of fact," and "unreasonable inferences" upon which it is based are exposed. Defendants' motion should thus be granted as to both types of Accused Products, *i.e.*, the "Accused Chips" and the "Simulators." At a minimum, CMU's complaint should be dismissed as to the Simulators, because i) even if the allegations as to the challenged limitations are found sufficient, they are pled only with respect to the Accused Chips; and ii) CMU fails to identify even a single example of an accused Simulator.

## II. CMU DOES NOT SATISFY THE "HOW OR WHY" REQUIREMENT FOR THE CHALLENGED CLAIM LIMITATIONS

### A. CMU's Cited Authority Is Inapposite

CMU's cited authority is flawed. CMU relies on cases decided under the more lenient pleading standard of Form 18 of the Federal Rules of Civil Procedure, which was abrogated in December 2015. These include *Dynetix Design Solutions*, *E. digital* (Opposition at 12), *Avocet Sports Technology* (*id.* at 13), *ABB Turbo Systems*, and *K-Tech Telecommunications* (*id.* at 14). CMU also improperly utilizes ellipses and truncations in its case quotations, as demonstrated by the table below.

| CMU's Citation | Quotation With Omissions Bolded | Significance |
|---|---|---|
| *SimpliVity Corp. v. Springpath, Inc.*, CV 4:15-13345-TSH, 2016 WL 5388951, at *10 (D. Mass. July 15, 2016) ("Perhaps in isolation, none of these allegations is enough to raise SimpliVity's entitlement | "Perhaps in isolation, none of these allegations is enough to raise SimpliVity's entitlement to relief from speculative to plausible. | CMU excised the portion that reveals that the Court's analysis pertained solely to allegations concerning *pre-suit knowledge* for |

| CMU's Citation | Quotation With Omissions Bolded | Significance |
| --- | --- | --- |
| to relief from speculative to plausible[, c]ollectively however, they suffice.") Opposition at 11. | Collectively however, they suffice, **even if barely so, to support a reasonable inference of Springpath's pre-suit knowledge of the '799 Patent."** | indirect infringement claims, not for direct infringement, and also the language indicating how tenuous the allegations were. |
| *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, CV 14-1430-LPS-CJB, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015), adopted by, CV 14-1430-LPS-CJB, 2016 WL 1274812 (D. Del. Mar. 31, 2016) ("In and of themselves, the allegations … may not have been sufficient …. But considered as a whole, they render it at least plausible."). Opposition at 11. | "In and of themselves, the allegations **regarding (1) Defendants' knowledge of patents related to the '239 patent or (2) the '239 patent's ubiquity in Defendants' industry,** may not have been sufficient here. **And even taken together, they may not make pre-suit knowledge *probable*.** But considered as a whole, they render it at least *plausible* **that Defendants were aware of the '239 patent and its claims prior to suit."** | Here again, CMU excised the portions making clear that the Court's analysis pertained solely to *pre-suit knowledge* for indirect infringement claims. |
| *ABB Turbo Sys. AG v. TurboUSA, Inc.*, 774 F.3d 979, 988 (Fed. Cir. 2014) ("[D]irect evidence of some facts…may be distinctively in the defendant's possession, requiring that the threshold standard of plausibility be applied to more circumstantial evidence.") Opposition at 14. | "direct evidence of some facts—**such as guilty knowledge, in some cases**—may be distinctively in the defendant's possession, requiring that the threshold standard of plausibility be applied to more circumstantial evidence." | CMU excised the portion making clear that the Court was not addressing a patent infringement claim at all, but was referring to "guilty knowledge," which was an element of the trade secret claim at issue. |

| CMU's Citation | Quotation With Omissions Bolded | Significance |
|---|---|---|
| *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reversing dismissal and explaining that the complaint "provide[d] [defendant] fair notice of infringement of the asserted patents" where it "specifically identified three accused products [] by name … and alleged that the accused products meet 'each and every element of at least one claim of the [] Patent'"). Opposition at 9. | "The complaint specifically identified the three accused products—by name **and by attaching photos of the product packaging as exhibits—**and alleged that the accused products meet "each and every element of at least one claim of the '113 [or '509] Patent, either literally or equivalently." | In addition to excising the additionally pled fact that the plaintiff also attached photos of the product packaging to its complaint, CMU also failed to point out that in denying the motion, the court noted that "[t]hese disclosures and allegations" are enough to provide VGH Solutions fair notice of infringement of the asserted patents." The court further noted that the case "involves a simple technology." *Id.* at 1260. |

**B. Defendants' Cited Authority Is Proper and Controlling**

CMU's attempt to distinguish Defendants' authority is also unavailing. First, CMU argues that *Atlas IP LLC v. Pacific Gas & Electric Co.*, Case No. 15-cv-05469-EDL, 2016 U.S. Dist. LEXIS 60211 (N.D. Cal. Mar. 9, 2016), is distinguishable because it recited "'***some elements*** of a representative claim ***without*** specifically tying the operation to any asserted claim or ***addressing all of the claim requirements.***'" Opposition at 10 (emphasis added in CMU's Opposition). CMU's emphasis seems to attempt to distinguish *Atlas IP* on the basis that the plaintiff in that case did not include all elements of the representative claim and did not specifically tie the asserted claim to the asserted products. However, the complaint in *Atlas IP* – like CMU's Complaint – recited ***all of the elements*** of the representative claim, and in fact suffered from the same deficiency as CMU's complaint – it failed to plead the "how or why" the accused products operate in the manner claimed by the representative claim.

Second, CMU attempts to distinguish *Jenkins v. LogicMark, LLC*, Civil Action No. 3:16-CV-751-HEH, 2017 U.S. Dist. LEXIS 10975 (E.D. Va. Jan. 25, 2017) by indicating that the complaint in *Jenkins* was even more deficient than CMU's complaint. Opposition at 10. However, there is nothing in

*Jenkins* to suggest that the court would have deemed the complaint sufficient had it been missing only allegations as to "how or why" the accused products infringed the asserted claims.

Finally, and perhaps most egregiously, CMU argues that in *UNILOC USA, Inc. v. Apple Inc.*, No. C 18-00359 WHA, 2018 U.S. Dist. LEXIS 75225 (N.D. Cal. May 2, 2018) the Court denied a motion to dismiss a "claim of direct infringement where the plaintiff 'assert[ed] that Apple products meet [a claim] limitation by parroting the claim language word-for word' and provided only a single high-level example." Opposition at 10-11. However, CMU failed to inform the Court that the *UNILOC* court explicitly held that Uniloc's claim chart, which did no more than parrot the claim language "word-for word," was a "conclusory statement [that] amounts to 'formulaic recitation' of the elements of Uniloc's claim and **is not entitled to the presumption of truth**." *UNILOC USA, Inc.*, 2018 U.S. Dist. LEXIS 75225 at *6 (emphasis added). The Court went further to rule that the claim chart "supplies no *factual* allegations showing *how* Apple products actually infringe. Under *Twombly*/*Iqbal*, this alone would not suffice to state a facially plausible claim for patent infringement." *Id.* at *6-7 (emphasis in original, citations omitted). Indeed, the *UNILOC* court concluded that it agrees "with Apple as to the applicable pleading standard," *id.* at *9, but denied the motion because Uniloc included "one specific example of how Apple products meet the 'graphics primitives' limitation." *Id.* Here, as in *UNILOC*, CMU's parroting of the claim language is equally insufficient and should not be entitled to the presumption of truth. The difference is that, unlike Uniloc, CMU did not provide a single plausible example as to how the Exemplary Accused products, *inter alia*, satisfy the "set" limitation of the Exemplary Claims.

### C. CMU's Conclusory Recitation of the Claim Limitations Does Not Satisfy Its Pleading Obligations

Rather than explain how its complaint plausibly alleges "how or why each claim limitation is met by the accused products," as required by *UNILOC*, CMU attempts to excuse its failure by relying on *Vendavo, Inc. v. Price f(x) AG*, Case No. 17-cv-06930-RS, 2018 Dist. LEXIS 48637 (N.D. Cal. Mar. 23, 2018), for the proposition that simply parroting the claim limitations and identifying accused products is sufficient. Opposition at 9-10. However, the *Vendavo* decision does not stand for the proposition that a party asserting patent infringement need not include plausible allegations of "how" or "why" the accused products satisfy the claim limitation at the pleading stage. Instead, the *Vendavo* Court deemed

that in the specific "context" of that case, a recitation of the claim language provided sufficient "factual assertions" because *Vendavo* was "asserting, in so many words, that the Price f(x) products function exactly in the manner described by the patent claims." *Id.* However, the reticence of the *Vendavo* Court to accept that pleading was apparent, as the court stated that "[i]f in the context of amending the complaint, however, Vendavo can provide further details of the basis of its infringement claims consistent with its duties under Rule 11 of the Federal Rules of Civil Procedure, it is encouraged to do so, to eliminate any uncertainty." *Id.* at *11-12.

The context of this case mandates that a conclusory recitation of the claim limitations is insufficient. As a threshold matter, unlike the *Vendavo* case where the defendants were prior employees accused of patent infringement and trade secret misappropriation, *i.e.*, having particular knowledge of the plaintiff's patented technology and products, there is no such relationship between CMU and Defendants, and CMU never marketed a product. Nor does CMU's complaint sufficiently disclose its positions as to its patents so as to put Defendants on notice of the methods purportedly covered by the Exemplary Claims. Indeed, notwithstanding the close relationship of the parties in the *Vendavo* case, the Court encouraged the plaintiff to provide further details to support its Rule 11 obligations. Here, where there was no such prior, close relationship between the parties, it is incumbent on CMU to explain the "how or why," both to provide the requisite notice, and to ensure it has met its Rule 11 obligations.

In addition, even were this Court to deem CMU's allegations sufficient under *Vendavo*'s reasoning, such conclusion would extend only to the Accused Chips. CMU's complaint still fails with regard to the accused Simulators, for which CMU does not provide even one example of an accused Simulator, in contrast to the Accused Chips, for which specific products are named. Docket Index No. 1 at ¶ 79. Defendants are thus left to guess as to which Simulators are even at issue in this case.

### D. CMU's Direct Infringement Allegations Are Premised on Unwarranted Deductions and Unreasonable Inferences of Fact that Fail the Plausibility Test

Apart from the improper conclusory allegations that simply parrot the entirety of the claim language (e.g., Docket Index No. 1 at ¶¶ 114-130), the only allegations that even arguably bear on the challenged limitations are ¶¶ 101-107. Paragraphs 101-105 discuss Exhibits 11-13, the two patent applications and one patent, and allege that these each disclose a "bank of DDNP filters." Paragraph 107 is the only

paragraph in the complaint that even arguably addresses "how" the "set of signal-dependent branch metric functions" limitation is allegedly met, *i.e*., by a "bank of data-dependent noise predictive filters." Docket Index No. 1 at ¶ 107. Accepting all these allegations as true, the key question before the Court is the plausibility of paragraph 106, highlighted by Defendants in their opening memorandum:

> Banks of data-dependent filters noise predictive filters, such as those described in Exhibits 11, 12 and 13, are used in the Viterbi branch metric calculations designed by Defendants and used in their TrueStore line of Exemplary Accused Products (Docket Index No. 1 at ¶ 106)

Significantly, this unsupported and unqualified allegation is not couched in terms of "information and belief," and the Court is not obligated to accept as true "bald assertions" with no plausible factual support. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The only factual support CMU pleads for paragraph 106 is the immediately preceding discussion of Exhibits 11-13 in ¶¶ 101-105. As Defendants pointed out in their opening brief, these allegations do not provide plausible support for its unqualified allegation in paragraph 106.

For example, CMU does not dispute that it pleads no facts supporting a reasonable inference that the subject matter described in the patent and patent applications of Exhibits 11-13 is actually incorporated into any of the Exemplary Accused Products. *See* Opposition at 5-6. Rather, CMU's only response is that by making this argument ***Defendants*** are somehow asking the Court to "conclude" that "Defendants paid to patent technology that they never deployed in their products." Opposition at 12.[2] This argument is not defensible. Defendants own thousands of patents, and file many patent applications describing technologies that are never actually commercialized, as is true for any large technology company. Indeed, two of these three exhibits (11 and 12) are simply published patent applications that were abandoned and thus never evolved into actual patents. In reality, it is ***CMU*** that is asking the Court to draw the unreasonable inference that simply because Defendants describe certain technology in a patent application, that technology is necessarily used in its commercial products, and in particular the specific products identified in its complaint. Thus, in this respect CMU's complaint, at best, raises no more than a "sheer possibility" that the accused products incorporate the subject matter of Exhibits 11-13, which is

[2] To be clear, Defendants dispute that the Exemplary Accused Products incorporate the subject matter of the cited patent and patent applications.

insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To be clear, Defendants seek no more than what that law requires – "factual allegations showing how or why each limitation is met by the accused products." Indeed, contrary to CMU's statements, Defendants do not contend that any of the three bulleted items at page 13 of CMU's Opposition are required. For example, Defendants' motion does not ask CMU to identify: i) the proprietary details of Defendants code their methods, ii) which of Defendants' products practice which of Defendants' patent claim, or iii) the roles of the named inventors of Defendants' patents in the development of Defendants' products. Opposition at 13. What the law requires is that to the extent CMU is relying on Defendants' patent or patent applications as a basis to allege that the Exemplary Accused Products infringe CMU's Exemplary Claims, CMU must provide a plausible factual basis for making the allegation that the Exemplary Accused Products use those specific patent and applications.

Similarly, CMU does not dispute that it pleads no facts to connect its sound bites to any of the Exemplary Accused Products. To be clear, Defendants' argument, which CMU ignores, is that CMU pleads no facts supporting a reasonable inference that purported references to Dr. Kavcic's algorithms or detector refer to algorithms covered by either patent, much less the specific algorithms of the Exemplary Claims. First, CMU does not allege facts supporting a reasonable inference that any of the current or former Defendants' employees it names in the complaint had ever seen either patent, or were even aware of their existence.[3] And even were the Court to draw an inference that references to "Kavcic's detector" and "Kavcic's DDNP algorithms" ***generally*** refer to the subject matter of the patents,[4] that supports at most a plausible inference of infringement of only the ***broadest*** claims, which are not even asserted. For example, of the 27 claims of the '180 patent, only dependent claim 2 is asserted, which depends from and is necessarily narrower than independent – and unasserted – claim 1. Similarly, CMU does not assert claim 1 of the '839 patent, which is broader than asserted claim 4.

CMU pleads no facts that connect its sound bites to the narrower Exemplary Claims. Thus, even accepting CMU's unreasonable inferences as true, its allegations remain deficient. Indeed, the two

---

[3] CMU asserts in footnote 3 of its brief (p. 14) that its complaint alleges that "Dr. Lee knew of the Patents." But none of the paragraphs CMU cites as support, which refer to alleged communications between Dr. Lee and Dr. Kavcic, alleges that the patents were part of those communications.

[4] CMU's assertion that every instance of DDNP is an industry accepted use that satisfies CMU's Exemplary Asserted Claims is another conclusory assertion that fails for lack of any factual basis.

limitations Defendants challenge by this motion are the very limitations that appear in the narrower, Exemplary Claims, but not the broader, unasserted claims. The sufficiency of CMU's pleading with respect to these limitations is critical, because without plausible allegations directed to these specific limitations, all that remains are allegations that at most satisfy CMU's obligations with respect to the broadest claims, which are not part of CMU's complaint.

Moreover, even if the Court finds that CMU's complaint plausibly pleads the presence of a "set of signal-dependent branch metric functions" in the operation of the accused products, the complaint is devoid of any allegation as to how or why the Exemplary Accused Products satisfy the "selecting a branch metric function" ***from this set***, the related limitation challenged by Defendants. CMU does not and cannot point to anything in its pleading that specifically addresses this limitation.

## III. CMU'S RELIANCE ON THE UNIVERSITY OF MINNESOTA CASE IS INAPPOSITE

CMU also points to *Regents of the University of Minnesota v. LSI Corp.*, Case No. 16-cv-2891 (WMW/SER), Dkt. 56 (D. Minn. June 29, 2017) which involves the same accused products as this case (but different functionality of such products), and contends that the district court there found "similar allegations" to be sufficient. However, in that case, the court noted that CMU "also relies on a product specification for a TrueStore product generated for Seagate by LSI" (p. 2), a fact glaringly absent from CMU's complaint in this case. Indeed, there is not a single factual allegation in CMU's complaint based on any product documentation for the Exemplary Accused Products. Moreover, that the Exemplary Accused Products include multiple different functionalities highlights the need for CMU to properly articulate plausible infringement allegations to put Defendants on notice of CMU's accusations.

CMU also wrongly contends that Defendants "demand a level of detail in CMU's pleadings that CMU could provide only after Defendants respond to discovery requests." Opposition at 13. As a threshold matter, CMU's positions are irreconcilably contradictory. CMU makes unqualified factual allegations that it asks the Court to accept as true, such as in paragraph 106, yet argues that the information is only within Defendants' control. If the latter is true, then what is CMU's Rule 11 or plausible basis for making the unqualified factual assertions? CMU cannot have it both ways.

Similarly, CMU's reference to the *Regents of the University of Minnesota* court's citation to *Twombly* that the University could "rely on a 'reasonable expectation that discovery will reveal

evidence' of the alleged infringement" (Opposition at 14) is unavailing because that statement followed its reference to the fact that, in that case, the University alleged in its complaint that "Defendants' products cannot be reverse-engineered to confirm that they perform the infringing method," something CMU does not allege with the respect to the purported accused functionality in this case. *Regents of Univ. of Minn.*, Case No. 16-cv-2891 (WMW/SER), Dkt. 56 at 5.

## IV. AT A MINIMUM, THE COMPLAINT SHOULD BE DISMISSED AS TO THE "SIMULATORS"

CMU acknowledges that its complaint identifies two separate types of accused products – "HDD Chips sold under the tradename TrueStore," which are defined as the "Accused Chips," and "computer-implemented detectors that execute code files to apply a set of branch metric functions to actual readback signal samples," which it separately defines as "Simulators." Docket Index. No. 1 at ¶ 79. The two types of accused products are collectively defined as "Exemplary Accused Products." *Id.* CMU identifies specific Accused Chips, but does not identify a single accused Simulator. *Id.*

Moreover, as Defendants noted in their opening brief, the substantive allegations that pertain to the challenged limitations are directed only to the Accused Chips, and not the "Exemplary Accused Products." In particular, both ¶¶ 106 and 107 are specifically directed to the "TrueStore line of Exemplary Accused Products," and make no mention of the separately accused Simulators. CMU attempts to brush aside this omission in its pleading with hand-waving attorney argument that "given what simulators do," its technical allegations apply equally to the Simulators. However, CMU does not cite to its complaint as support for this allegation, but improperly cites only to the Federal Circuit's *Marvell* decision that related to products of a different company. *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original); *Broam v. Bogan*, 320 F.3d 1023, 1026 n. 2 (9th Cir. 2003). Thus, it is undisputed that the Complaint lacks critical substantive allegations as to "how or why" the Simulators meet the "set" and "selecting" limitations.

Dated: October 25, 2018

Respectively submitted,

**FOLEY & LARDNER LLP**

/s/ *Steven J. Rizzi*

Steven J. Rizzi, *Admitted Pro Hac Vice*
srizzi@foley.com
Ramy Hanna, *Admitted Pro Hac Vice*
rhanna@foley.com
**FOLEY & LARDNER LLP**
90 Park Avenue
New York, NY 10016-1314
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

AND

Barry G. Felder, CA Bar No. 175658
bgfelder@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street
Suite 3500
Los Angeles, CA 90071-2411
Telephone: (213) 972-4500
Facsimile: (213) 486-0065

*Attorneys for Defendants LSI Corporation and Avago Technologies U.S. Inc.*

**PROOF OF SERVICE Electronic Filing**

I HEREBY CERTIFY that on October 25, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the Electronic Service List for this case.

*/s/ Steven J. Rizzi*
Steven J. Rizzi