KENNETH L. STEINTHAL (State Bar No. 268655)
ksteinthal@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1211
Facsimile: (415) 318-1300

STEVEN JAY RIZZI (admitted *pro hac vice*)
srizzi@kslaw.com
RAMY HANNA (admitted *pro hac vice*)
rhanna@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Attorneys for Defendants LSI CORPORATION and
AVAGO TECHNOLOGIES U.S. INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,<br><br>        Plaintiff,<br><br>    v.<br><br>LSI CORPORATION AND AVAGO<br>TECHNOLOGIES U.S. INC.,<br><br>        Defendants. | Case No. 3:18-cv-04571-JD<br><br>DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS OF INVALIDITY DUE TO FAILURE TO CLAIM PATENT-ELIGIBLE SUBJECT MATTER<br><br>Date: August 1, 2019<br>Time: 10:00 a.m.<br>Courtroom: 11 – 19th Floor<br>Judge: Hon. James Donato |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 1, 2019, at 10:00 a.m., or as soon thereafter as may be heard, in Courtroom 11 of the above-captioned Court, located at the United States Court House, 450 Golden Gate Avenue, 19th floor, San Francisco, CA 94102, defendants LSI Corporation and Avago Technologies, U.S., Inc. (collectively, "Defendants"), by their attorneys, will move this Court for an order entering judgment against Plaintiff Carnegie Mellon University ("Plaintiff" or "CMU") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in support thereof, all pleadings and papers on file in this action, and such other and further matters as the Court may consider.

## STATEMENT OF RELIEF SOUGHT

Defendants request that judgment be entered on the pleadings that the patent claims asserted by CMU in this action are invalid for failure to claim patent-eligible subject matter as required by 35 U.S.C. § 101.

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..................................................................................... i

STATEMENT OF RELIEF SOUGHT ..................................................................................... i

TABLE OF CONTENTS............................................................................................................ ii

TABLE OF AUTHORITIES .................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................1

I.      Introduction........................................................................................................................1

II.     Legal Standards.................................................................................................................2

III.    The Section 101 Inquiry is Controlled by the Claim Language .........................................2

IV.     The Asserted Claims are Highly Abstract and Divorced From Any "Physical Process"....3

V.      Step One of the *Alice* Analysis .......................................................................................5

        A.      The Federal Circuit Did Not Address Patent Eligibility in the Marvell
                Litigation...............................................................................................................5

        B.      Methods for Calculating are Not Patent Eligible Subject Matter Under
                Controlling Supreme Court and Federal Circuit Precedent ...................................5

                1.      *Parker v. Flook* ...............................................................................6

                2.      *Diamond v. Diehr*............................................................................6

                3.      Post-*Alice* Precedent Confirms CMU's Claims are Directed to an
                        Abstract Idea ...........................................................................................7

        C.      CMU's Asserted Patent Claims Fail Step One of the *Alice* Inquiry ....................10

VI.     CMU's Asserted Claims Fail Step Two of The Alice Analysis .......................................11

VII.    CMU's Factual Allegations Do Not Avoid Patent Ineligibility as a Matter of Law .........12

        A.      CMU's Pleadings Confirm That the Asserted Claims are Not Patent
                Eligible..................................................................................................................12

        B.      CMU's Patents Raise the Preemption Concerns Underlying *Flook* and
                *Alice* ....................................................................................................................15

VIII.   Conclusion ........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                               **Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)................................................................2

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)................................................................................2

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002).........................................................4, 15

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015)..............................................................15

*Bancorp Services v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012)................................................................2

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir.), *petition for cert. filed* (Sept. 28, 2018)........11

*Bilski v. Kappos*,
  561 U.S. 593 (2010)..............................................................................12

*Carnegie-Mellon Univ. v. Marvell Techn. Grp., Ltd.*,
  807 F. 3d 1283 (Fed. Cir. 2015)..............................................................5

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  No. 4:17-CV-5928-YGR..........................................................................2

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)......................................................... *passim*

*Diamond v. Diehr*,
  450 U.S. 175 (1981)............................................................................6, 9

*Digitech Image Techn., LLC v. Electronics for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014).........................................................6, 13

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
  849 F.2d 1430 (Fed. Cir. 1988)...............................................................5

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)...............................................................3

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)............................................................7, 9

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016).........................................................14, 15

*Gottschalk v. Benson*,
    409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972) ...................................................8

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ..................................................................................12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ........................................................................................................2

*McRO, Inc. v. Bandai Namco Games America Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ....................................................................................9

*Parker v. Flook*,
    437 U.S. 584 (1978) ...................................................................................................6, 8

*In re Roslin Inst. (Edinburgh)*,
    750 F.3d 1333 (Fed. Cir. 2014) ....................................................................................2

*SAP America, Inc. v. Investpic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) .................................................................................1,7

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016), *cert. denied,* 138 S. Ct. 71 (2017) ..........................3

*Thales Visionix Inc. v. United States*,
    850 F.3d 1343 (Fed. Cir. 2017) ....................................................................................9

*Trading Techns. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1378 (Fed. Cir. 2019) ..................................................................................11

*Twilio, Inc. v. Telesign Corp.*,
    249 F. Supp. 3d 1123 (N.D. Cal. 2017) .......................................................................7

*Uniloc USA, Inc. v. Apple, Inc.*,
    No. C 18-00358 WHA, 2018 WL 2287675 (N.D. Cal. May 18, 2018)......................2

**Statutes**

35 U.S.C. § 101 ..................................................................................................................1

**Other Authorities**

Federal Rules of Civil Procedure Rule 12 ............................................................. *passim*

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.  Introduction**

3      Plaintiff Carnegie Mellon University ("CMU") asserts only two patent claims in this

4  case, claim 4 of U.S. Patent No. 6,201,830 ("the '839 patent") and claim 2 of U.S. Patent No.

5  6,438,180 ("the '180 patent").  For the reasons set forth herein, these claims are invalid as a

6  matter of law under 35 U.S.C. § 101 for failure to claim patent eligible subject matter.

7      Each claim recites a "method of determining branch metric values," which are the result

8  of statistical operations that may be used in "sequence detection." Sequence detection is not a

9  physical process, but refers to the "detection" of a sequence of data in a noisy signal.  A well-

10  known method of sequence detection utilizes the Viterbi algorithm, which uses branch metric

11  values to predict the sequence of data actually transmitted based on the noisy received signal.

12      The claims do not claim a process for reading data or sequence detection, but only the

13  intermediate step of calculating branch metric values, a wholly abstract endeavor.  And the only

14  purported novelty of the patents is the manner in which these calculations are made, *i.e.*, the

15  particular functions used, referred to as "branch metric functions."  The focus of the claims is the

16  abstract idea of applying mathematical functions to values (signal samples) to obtain other values

17  (branch metric values).  And although the patents describe "magnetic recording" as an exemplary

18  application, "[e]ven a specification full of technical details about a physical invention may

19  nonetheless conclude with claims that claim nothing more than the broad law or abstract idea

20  underlying the claims, thus preempting all use of that law or idea."  *ChargePoint, Inc. v.*

21  *SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).  That is the case here.

22      Under step two of *Alice*, the claims lack an "inventive concept" that would transform the

23  abstract idea into a patent eligible invention in view of the patents' and CMU's statements that

24  the claimed steps may be performed on available computers.  This is because "invocation of

25  already-available computers that are not themselves plausibly asserted to be an advance, for use

26  in carrying out improved mathematical calculations, amounts to a recitation of what is well-

27  understood, routine, [and] conventional."  *SAP America, Inc. v. Investpic, LLC*, 898 F.3d 1170

28  (Fed. Cir. 2018) (quotations omitted).  The asserted claims are thus invalid as a matter of law.

## II.   Legal Standards

Analysis under F.R.C.P. 12(c) is "substantially identical" to analysis under F.R.C.P. 12(b)(6). *Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358 WHA, 2018 WL 2287675, at *2 (N.D. Cal. May 18, 2018).  Patent eligibility is a question of law, *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014), that "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP*, 898 F.3d at 1166.  And "[a]lthough issued patents are presumed valid, they are not presumed eligible under Section 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-CV-5928-YGR (additional citations omitted), 42018 WL 3328164, at *4 (N.D. Cal. July 6, 2018) (citation omitted).

"[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Services v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).  "If there are claim construction disputes at the Rule 12(b)(6) stage," the district court "must proceed by adopting the non-moving party's constructions, . . .or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (citations omitted).

## III.   The Section 101 Inquiry is Controlled by the Claim Language

Abstract ideas are not patent eligible.  District courts employ the two-step analysis of *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012), and *Alice Corp. v. CLS Bank Int'l.,* 573 U.S. 208, 216 (2014) to analyze eligibiltiy.  "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217.  If the claims are directed to a patent ineligible concept, step two entails a "search for an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18 (internal quotation marks omitted) (quoting *Mayo*, 566 U.S. at 72-73).

The Federal Circuit has consistently treated "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental

processes within the abstract-idea category." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1146-47 (Fed. Cir. 2016) (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016)).  The law concerning patent eligibility has evolved significantly since CMU's trial against Marvell in 2012, where the defense was never raised.  The two claims that CMU asserts in this case are invalid under controlling precedent concerning patent eligibility.

At step one, courts consider the "focus" of the claims, viewing the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *ChargePoint,* 920 F.3d at 765 (Fed. Cir. 2019) (citations omitted).  One aspect of the inquiry that has been clarified since *Alice* is the role of the patent specification.  In *ChargePoint*, the Federal Circuit stated that, "while the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *Id.* at 766. (citations omitted); *see also*, *Synopsys*, 839 F.3d at 1149 ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

The *ChargePoint* court noted that the "breadth of the claim language [for the patent at issue] illustrates why any reliance on the specification in the § 101 analysis must always yield to the claim language." 920 F.3d at 769.  Of particular relevance in light of CMU's contention that the patent claims "describe inventions that improve a physical process by overcoming limitations in physical devices" (Docket Index ("DI") No. 1 (Complaint) at ¶65), is the court's statement that "[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *ChargePoint*, 920 F.3d at 769.  The patents describe the purported invention with reference to a magnetic recording system, but the asserted claims "claim nothing more than the . . .abstract idea underlying the claims." *Id*.

## IV.  The Asserted Claims are Highly Abstract and Divorced From Any "Physical Process"

Claim 4 of the '893 patent is representative of both asserted claims for purposes of the §101 analysis and reads as follows:

> 4. A method of determining branch metric values for branches of a trellis for a Viterbi-like detector, comprising:
> selecting a branch metric function for each of the branches at a certain time

index from a set of signal-dependent branch metric functions; and
applying each of said selected functions to a plurality of signal samples to determine the metric value corresponding to the branch for which the applied branch metric function was selected, wherein each sample corresponds to a different sampling time instant.

Most noteworthy about the asserted claims is what they lack.  There is no mention of a magnetic recording system, or reading data from any physical media.  Rather, the claims are completely disembodied from the physical realm and claim the purported innovation of the patent at a high level of abstraction and breadth, divorced from anything physical or concrete.  CMU nevertheless spends several pages in its complaint discussing challenges associated with reading data from a magnetic medium (Docket Index No. 1, ¶¶28-51), but while the patents admittedly discuss magnetic recording as an *impetus* for the invention, and a magnetic recording system as an exemplary *application*, the asserted claims are in no way "directed to" an innovation in magnetic recording technology, as the claim language makes plain.

It is noteworthy that the patents include 55 claims, with the asserted claims being the most abstract.  In the Marvell litigation, CMU asserted many claims that are far less abstract but are *not* asserted in this case.  These claims provide helpful context, and reinforce that the asserted claims are directed to an abstract idea.  For example, claim 23 of the '839 patent -- which Marvell was found not to infringe in response to its motion for summary judgment -- is actually directed to a "system for recording information on a magnetic medium," and includes many physical elements, including several discrete "circuits," as well as a "write head" for "writing [] signals to the recording medium," and a "read head" for "reading [] signals from the recording medium."  It also specifies a "detector circuit" that performs the function of "detecting a plurality of data from said read signals" and includes a "Viterbi-like detector circuit."  Claim 19, also asserted against Marvell, is similarly directed to a "detector circuit for detecting a plurality of signal samples read from a recording medium," and includes a "Viterbi-like detector circuit."

In this case, CMU chose not to assert any of these (or other) less abstract claims that actually recite a "physical process" and "physical devices," and the Court should not rewrite the asserted claims to import such physical limitations so as to preserve their validity.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002) ("It is not our function to

rewrite [indefinite] claims to preserve their validity."); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1434 (Fed. Cir. 1988).

The contrast between the nonasserted claims and claim 4 of the '839 patent is stark; claim 4 includes only the two steps of "selecting [] branch metric function[s]. . ." and "applying each of said selected functions to a plurality of signal samples to determine the metric value corresponding to the branch . . ."  There is no dispute that a "branch metric function" is a mathematical relation.  In addition, the parties agree that: i) "signal sample" means simply the "value [] of a signal at a certain point in time"; and ii) "branch metric value" is simply a "numerical value of a 'branch.'" (DI 78, pg. 2).  Thus, the claim covers only selecting and applying a mathematical relation to one set of values, in order to calculate another set of values, *i.e.*, nothing more than mathematical calculations.  It does not recite any steps that anchor the calculating steps, or the determined branch metric values, to any patent-eligible process.

**V.   Step One of the *Alice* Analysis**

**A.   The Federal Circuit Did Not Address Patent Eligibility in the Marvell Litigation**

In response to Defendants' § 101 challenge, CMU has signaled that it intends to rely on a portion of a footnote in the Federal Circuit's opinion in *Carnegie-Mellon Univ. v. Marvell Techn. Grp., Ltd.*, 807 F. 3d 1283, 1297 n.3 (Fed. Cir. 2015).  However, that footnote does not address a § 101 challenge -- a defense never raised by Marvell -- but an argument Marvell made that the claims did not cover "simulations," because "if the claims reached [] simulations they would 'cover an abstract idea not otherwise subject to patenting.'"  *Id.* (quoting Marvell's opening brief).  The balance of that footnote is dicta in response to Marvell's argument regarding claim scope and infringement.  Neither the district court nor the Federal Circuit ever considered patent eligibility, much less the decisions post-dating the *Marvell* decision, and clarifying that the "§101 inquiry must focus on the language of the Asserted Claims themselves."  *Synopsys*, 839 F.3d at 1149.  The footnote does not quote or discuss the actual language of the asserted claims.

**B.   Methods for Calculating are Not Patent Eligible Subject Matter Under Controlling Supreme Court and Federal Circuit Precedent**

The two-part test of *Mayo* and *Alice* traces its roots to two earlier Supreme Court cases,

*Parker v. Flook*, 437 U.S. 584, 594-95 (1978), and *Diamond v. Diehr*, 450 U.S. 175 (1981).

### 1. ***Parker v. Flook***

In *Parker v. Flook*, which involved a patent claim for a method that used a mathematical formula to update alarm limits in a catalytic conversion process, the Supreme Court held that "'if a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory.'" *Flook*, 584 U.S. *at* 595 (quoting *In re Richman*, 563 F.2d. 1026, 1030 (C.C.P.A. 1977)); *see also Digitech Image Techn., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible.").

The claim in *Flook* was *less* abstract than the claims here. The formula was applied for a "specific purpose" that was also claimed -- a "method for updating the value of at least one alarm limit on at least one process variable involved in a process comprising the catalytic chemical conversion of hydrocarbons." And the claim included a step of "adjusting" the alarm limit. 584 U.S. at 588, 596-97. The Court nevertheless rejected the claim. "The process itself, not merely the mathematical algorithm, must be new and useful." *Id.* at 591. However, the claim "simply provides a new and presumably better method for calculating alarm limit values." *Id.* at 594-95.

CMU's "branch metric values" are at best analogous to the "alarm limits" in *Flook*, and it may be presumed that CMU claims a "better method for calculating [branch metric values]." *Id.* But the Supreme Court made clear that this does not render the claims patent eligible.

### 2. ***Diamond v. Diehr***

The *Flook* Court did state that "it is equally clear that a process is not unpatentable because it contains . . .a mathematical algorithm." *Id.* at 590. The Court's decision a few years later in *Diamond v. Diehr*, 450 U.S. 175 (1981), provides a helpful contrasting example of a claim including a mathematical algorithm that was held patent eligible. Unlike *Flook*, the claims were directed to "a physical and chemical process for molding precision synthetic rubber products." *Id.* at 184. This conclusion "[was] not altered by the fact that in several steps of the process a mathematical equation and a programmed digital computer are used." *Id.* at 185.

The Court distinguished *Flook* by noting that, "the respondents here do not seek to patent a mathematical formula.  Instead, they seek patent protection for a process of curing synthetic rubber.  [The] process admittedly employs a well-known mathematical equation, but they do not seek to pre-empt the use of that equation."  *Id*. at 187.  The Court pointed to "other steps" in the claim, including "installing rubber in a press, closing the mold, constantly determining the temperature of the mold, constantly recalculating the appropriate cure time through the use of the formula and a digital computer, and automatically opening the press at the proper time."  *Id*.  CMU's claims lack these "other steps," which "transformed the process into an inventive application of the formula."  *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 70).

### 3. Post-*Alice* Precedent Confirms CMU's Claims are Directed to an Abstract Idea

In the step one analysis, courts often "compare[] claims at issue to those claims already found to be directed to an abstract idea in previous cases."  *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp.3d 1123, 1137 (N.D. Cal. 2017) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016)).  Such cases confirm that CMU's claims are directed to an abstract idea.

### (i) *SAP America, Inc. v. Investpic, LLC*

In *SAP America, Inc. v. Investpic, LLC*, 898 F. 3d 1161 (Fed. Cir. 2018), the Federal Circuit affirmed the district court's grant of a motion on the pleadings under Rule 12(c) for invalidity based on ineligible subject matter for a patent covering systems and methods for performing statistical analyses of investment information.  For example, claim 1 read as follows:

> 1. A method for calculating, analyzing and displaying investment data comprising the steps of:
> (a) selecting a sample space, wherein the sample space includes at least one investment data sample;
> (b) generating a distribution function using a resampled statistical method and a bias parameter, wherein the bias parameter determines a degree of randomness in a resampling process; and,
> (c) generating a plot of the distribution function.

*Id.* at 1164.

The "selecting" and first "generating" limitations above are akin to the "selecting" and "applying" steps of claim 4 of the '839 patent.  And the claim adds the step of "generating a plot of the distribution function," thus resulting in something tangible.  Nevertheless, the Federal Circuit affirmed the district court's grant of a motion on the pleadings for invalidity under §101:

7

The claims here are ineligible because their innovation is an innovation in ineligible subject matter. Their subject is nothing but a series of mathematical calculations based on selected information and the presentation of the results of those calculations (in the plot of a probability distribution function). No matter how much of an advance in the finance field the claims recite, the advance lies entirely in the realm of abstract ideas, with no plausibly alleged innovation in the non-abstract application realm. An advance of that nature is ineligible for patenting.

*Id.* at 1163.

The court further noted that, like CMU's claims, "[t]he focus of the claims [] is on selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis. That is all abstract." *Id.* at 1167.  Here the focus is on "selecting" a mathematical function and applying it to information (values associated with signal samples) to obtain other information (branch metric values), which is where the claims end. After noting that "claims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea," the court continued:

> "Information as such is an intangible," hence abstract, and "collecting information, including when limited to particular content (which does not change its character as information), [i]s within the realm of abstract ideas." *Id.* (citing cases). So, too, is "analyzing information . . . by mathematical algorithms, without more." *Id.* at 1354 (citing cases, including *Parker v. Flook*, 437 U.S. 584, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978), and *Gottschalk v. Benson*, 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972)…And "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Id.* (citing cases). The claims here are directed at abstract ideas under those principles.

*Id.* at 1167.

Notably, the *SAP* decision is not based on the *nature* of the information, *i.e.*, "investment data," because "it does not matter" if the information is "'limited to a particular content' or a particular 'source,'" which "does not make the collection and analysis other than abstract." *Id.* at 1167-1168 (citing *Flook* and *Gottschalk v. Benson, 409 U.S. 63 (1972)).*  Indeed, the "investment character" of the information in *SAP* invoked a "***separate category*** of abstract ideas involved in *Alice* and many of our cases -- 'the creation and manipulation of legal obligations such as contracts involved in fundamental economic practices.'"  *Id.* at 1168 (emphasis added) (quoting *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015)).

Thus, claims directed to "collecting and analyzing information" are abstract ideas,

whether that information is alarm limits as in *Flook*, binary-coded decimal numerals as in *Benson*, investment data as in *SAP*, or the "values" of "signal samples" as in CMU's claims.

**(ii) Post-*Alice* Decisions Finding Claims Patent Eligible Are Not Applicable**

*SAP* also distinguished post-*Alice* decisions finding claims involving mathematical algorithms patent-eligible.  For example, the court held the claims were "critically different" from those in *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), which were directed to the "creation of something physical," *i.e*, the display of "lip synchronization and facial expressions" of animated characters on screens. *SAP*, 898 F.3d at 1167.  The court noted that the "claimed improvement was to how the physical display operated (to produce better quality images), unlike (what is present here) a claimed improvement in a mathematical technique with no improved display mechanism." *Id.*  Here too, the claimed improvement is solely in the "mathematical technique" for calculating branch metric values.

The Federal Circuit also addressed *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017), which concerned claims where "the improvement was in a physical tracking system." *SAP,* 898 F.3d at 1168.  The court noted that in that case the "use of mathematics to achieve an improvement no more changed the conclusion that improved physical things and actions were the subject of the claimed advance than it did in *Diamond v. Diehr*" *Id.* The court distinguished the *SAP* claims because, like CMU's claims, "the focus of the claims is not a physical-realm improvement but an improvement in wholly abstract ideas — the selection and mathematical analysis of information, followed by reporting or display of the results." *Id.*

This court should also reject any attempted reliance on *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1336 (Fed. Cir. 2016), where the Federal Circuit held that claims for a "data storage and retrieval system for a computer memory" were "directed to a specific improvement to the way computers operate." *Id.*  As the Federal Circuit aptly noted in *SAP*, "[h]ere, the focus of the claims is not any improved computer or network, but the improved mathematical analysis; and indeed, the specification makes clear that off-the-shelf computer technology is usable to carry out the analysis." 898 F.3d at 1168.  The same is true here.  Indeed, CMU argued to the Federal Circuit that the "claims can be carried out 'on a computer,'" citing the portion of its

1   patents describing use of "a personal computer, a workstation, or a mainframe." DI 97-1

2   (CMU's Answering Brief), pg. 62; '839 patent at 11:20-29. In other words, "[t]he claims of the

3   [asserted] patent thus fit into the familiar class of claims that do not 'focus . . . on [] an

4   improvement in computers as tools, but on certain independently abstract ideas that use

5   computers as tools.'" 898 F.3d at 1168 (quoting *Electric Power*, 830 F.3d at 1354).

6      **C.   CMU's Asserted Patent Claims Fail Step One of the *Alice* Inquiry**

7          Here too the §101 analysis is governed by *Flook* and *Benson*, cases holding patent claims

8   unpatentable where the focus of the claims is "analyzing information. . .by mathematical

9   algorithms, without more." *SAP,* 893 F.3d at 1167 (quoting *Elec. Power*, 830 F.3d at 1354). All

10   of the reasoning supporting ineligibility in *SAP* applies here. The focus of the claims is on a

11   purportedly improved mathematical analysis involving only the steps of "selecting a branch

12   metric function," and "applying" the function to "signal samples," and for claim 2 of the '180

13   patent, the preliminary step of "receiving" the samples. As discussed below, the preambles are

14   not limitations, but even if considered, they do not alter the §101 analysis. Indeed, unlike in

15   *McRO*, where the claims were directed to a "method for automatically animating lip

16   synchronization and facial expression of three-dimensional characters," *McRO,* 837 F.3d at

17   1307, and *Thales*, which claimed a "system for tracking the motion of an object relative to a

18   moving reference frame," 850 F.3d at 1345, the preambles here recite only a "method for

19   determining branch metric values," which, as CMU admits, are simply "numerical value(s)."

20          The nonasserted claims demonstrate that CMU could have similarly limited the asserted

21   claims to, for example, "an improved method for reading information from a magnetic storage

22   medium." Whether the §101 analysis would differ for a claim *actually* directed to a method for

23   reading data from a magnetic recording medium is not before the Court. The *ChargePoint*

24   decision is on point: "[e]ven a specification full of technical details about a physical invention

25   may nonetheless conclude with claims that claim nothing more than the broad law or abstract

26   idea underlying the claims, thus preempting all use of that law or idea." *ChargePoint*, 920 F.3d

27   at 769. In sum, controlling case law dictates that CMU's claims are directed to an abstract idea,

28   *i.e.*, performing mathematical calculations on one set of values to obtain another set of values.

## VI.  CMU's Asserted Claims Fail Step Two of The Alice Analysis

Step two of *Alice*– the "search for an inventive concept" -- asks whether the claims include "'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id*. at 773.  To be patent-eligible, "the inventive concept must be 'sufficient to ensure that the patent in practice amounts to significantly more' than a patent on the abstract idea." *Id*. (quoting *Mayo*, 566 U.S. at 72-73).  In addition, "'a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than the ineligible concept.'" *Id*. (quoting *BSG Tech. LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).  This is because "[t]he abstract idea itself cannot supply the inventive concept, 'no matter how groundbreaking the advance.'" *Trading Techns. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019).

While the "inventive concept" analysis asks, "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," a question of fact, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), "[the] question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP*, 898 F.3d at 1166.  CMU made no allegations that raise any factual issues concerning the "inventive concept" inquiry, because "invocation of already-available computers that are not themselves plausibly asserted to be an advance, for use in carrying out improved mathematical calculations, amounts to a recitation of what is 'well-understood, routine, [and] conventional.'" *SAP*, 898 F.3d at 1170 (quotations omitted).

Indeed, the patents preclude any argument that there is anything "inventive" outside the realm of abstract ideas, and specifically state that the algorithms described and claimed therein "can be performed on a computer," which includes "a personal computer, a workstation, or a mainframe computer." '839 patent at 11:20-29.  And in successfully arguing to the Federal Circuit in the Marvell litigation that the claims read on "simulations" performed by Marvell, which were nothing more than off-the-shelf computers alleged to be programmed to perform the steps of the claimed method, CMU relied on "the patents' express teaching that the claims can be

DEFTS' MTN FOR JUDGMENT OF INVALIDITY                    CASE NO.  3:18-cv-04571-JD

1    carried out 'on a computer.'"  DI 97-1(CMU's Answering Brief), pg. 62.

2         The Federal Circuit's step two analysis in *SAP* thus applies equally to the claims at issue:

3         There is, in short, nothing "inventive" about any claim details, individually or in
4         combination, that are not themselves in the realm of abstract ideas. In the absence
         of the required "inventive concept" in application, the claims here are legally
5         equivalent to claims simply to the asserted advance in the realm of abstract ideas
         — an advance in mathematical techniques in finance. Under the principles
6         developed in interpreting § 101, patent law does not protect such claims, without
         more, no matter how groundbreaking the advance.
7    *SAP*, 898 F.3d  at 1170.

8         Finally, notwithstanding the absence of any such limitations in the claim, CMU may

9    argue that the claims should be construed as limited to use of the claimed algorithm in a

10   magnetic recording system.  There is no basis to restrict the claims in this way, but even if it is

11   assumed for purposes of this motion that the claims are so limited, that does not change the

12   analysis.  "*Flook* stands for the proposition that the prohibition against patenting abstract ideas

13   cannot be circumvented by attempting to limit the use of [the idea] to a particular technological

14   environment."  *Bilski v. Kappos*, 561 U.S. 593, 610-611 (2010) (internal quotations omitted); *see*

15   *also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir.

16   2015) ("[a]n abstract idea does not become nonabstract by limiting the invention to a particular

17   field of use or technological environment, such as the Internet.").

18        The asserted claims lack an inventive concept, and thus are invalid.

19   **VII.  CMU's Factual Allegations Do Not Avoid Patent Ineligibility as a Matter of Law**

20        **A.  CMU's Pleadings Confirm That the Asserted Claims are Not Patent Eligible**

21        CMU alleges that "the methods cannot be performed mentally or with pencil and paper

22   because the claims require that the methods be performed in a detector and because the human

23   mind cannot possess noisy signal samples and, therefore, cannot apply functions to noisy signal

24   samples."  DI 1, ¶65; DI 100, ¶19.  However, the claims do not include any step of "detecting,"

25   and the only reference to a "detector" is in the preambles, which are not claim limitations. In this

26   regard, the preamble of claim 4 of the '839 Patent states that the claimed method of "determining

27   branch metric values for branches of a trellis" is simply performed "*for*" a detector.  The

28   preamble thus recites only the result of practicing the claimed steps ("determining branch metric

values"), which is also stated in the "applying" step, and the intended use for those values ("for a detector"). The preamble of claim 1 of the '180 patent similarly repeats the "determining branch metric values" result of the claim, and recites where the branch metric values are used ("in a detector"). In other words, the "detector" references in the preambles simply recite the *purpose or intended use* for the calculated values, and thus do not limit the scope of the claim.

*Digitech Image Techns., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014), is on point. That case involved a §101 challenge to a claimed "method of generating a device profile that describes properties of a device in a digital image reproduction system for capturing, transforming or rendering an image" (preamble), comprising the steps of "generating first data . . .," "generating second data . . .," and "combining said first and second data . . ." *Id. at* 1351. The court held that the claim "claims an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine." *Id.* at 1350. It noted that "nothing in the claim language expressly ties the method to an image processor," and that the claim "does not claim the processor's use of that profile in the capturing, transforming, or rendering of a digital image." *Id*. at 1351. The court rejected the argument that the claimed method was performed in an "image processor" due to the "image reproduction system" in the preamble, because the court has "routinely held that a preamble does not limit claim scope if it 'merely states the purpose or intended use of an invention.' *Bicon, Inc. v. Straumann Co.,* 441 F.3d 945, 952 (Fed. Cir. 2006)." *Id*.

The above reasoning applies to the asserted claims. Nothing in the claims expressly ties the method to a "detector." Nor do the claims claim the detector's use of the branch metric values for any purpose, such as "outputting a delayed signal sample," a limitation that appears in claims 11 and 16 of the '839 patent. CMU chose to omit any such limitations from the asserted claims, and claim only the bare abstract idea of performing mathematical calculations.

Even if it is assumed the preambles are limitations for purposes of this motion, they serve only to confirm that the claims are directed to an abstract idea. As discussed above, the claim 4 preamble specifies that the purpose of the claimed method is simply "determining branch metric values for branches of a trellis for a Viterbi-like detector." And the parties agree that: i) "branch

13

metric value" is simply a "numerical value of a 'branch,'"; ii) "branch" is an abstract concept, *i.e*., "a potential transition between two states (nodes) immediately adjacent in time in a 'trellis'"; and iii) "trellis" is also an abstract concept, *i.e*., a "graphical representation of the progression of states of a communications channel in time, wherein states are depicted as nodes and potential transitions between states are depicted as lines or arrows." (DI 78, pgs. 1-2).  None of the preamble language "transforms" the abstract idea of the body of the claim into a patentable invention.  Rather, it serves to reinforce that the claims are directed to an abstract idea.

Similarly, CMU's contention that "the human mind cannot possess noisy signal samples" is misleading.  CMU admits that "signal sample" is properly construed as "a *value* of a signal at a certain point in time."  And the claim requires nothing more than performing a selected mathematical operation on those values, which is within the capabilities of the human mind.  Even accepting as true the facts pled for purposes of this motion, "the inability for the human mind to perform each claim step does not alone confer patentability."  *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016) (citing *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can.(U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.")).  Moreover, CMU's argument is belied by the breadth of the claims themselves, which are agnostic as to the complexity of the claimed calculations.  Indeed, in describing an example of "how the algorithm [] works," the patents use a "simple trellis structure" shown in Fig. 4, with only four nodes and two branches entering (not shown) and leaving each node, for a total of just 16 branches, and thus 16 calculations associated with the claimed steps of "selecting" and "applying" the "branch metric functions" to the "signal samples" to "determine the metric value corresponding" to each of the 16 branches.  ('839 Patent, at col. 10, 26-43 and Fig. 4) (showing eight branches leaving four nodes).

CMU also alleges that "the claimed inventions improve the sequence detector in a read channel in an HDD by enabling the detector to discern more accurately what is written on the magnetic recording medium, which is tied to what the read channel has sensed."  (DI 1 at ¶66)  However, even accepting its allegations concerning improved accuracy as true, the claims do not

1    recite such improvement.  "To the extent that [the patent holder] suggests that its claimed

2    invention recites a technological advance . . . , its claims do not recite any such improvement.

3    Rather, the claimed invention is directed to the broad concept . . ." *FairWarning*, 839 F.3d at

4    1097 (affirming dismissal due to patent ineligibility).  The claims say nothing about improving a

5    method for reading data from a magnetic recording medium, and CMU cannot import such

6    limitations into the claims to avoid invalidity under § 101.  *Allen Eng'g Corp.*, 299 F.3d at 1349.

7       Most telling is CMU's allegation that the only "non-routine and unconventional steps"

8    *claimed* in the patents are "for determining branch metric values. . ." (DI 100 ¶19), which, as

9    discussed above, are all wholly part of a patent-ineligible algorithm.  *SAP*, 898 F.3d at 1167.  As

10    a matter of law, such allegedly "improved mathematical calculations" cannot supply the

11    necessary "inventive concept."  *Id.* at 1170. Finally, CMU's sound bites from the Marvell

12    litigation and "breakthrough" allegation (DI 100 at ¶19) are irrelevant, because advances in

13    mathematical techniques are  not patentable, "no matter how groundbreaking the advance."  *Id.*

14    **B. CMU's Patents Raise the Preemption Concerns Underlying *Flook* and *Alice***

15       Lastly, although preemption concerns are fully addressed by the *Mayo/Alice* analysis

16    above, *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015), it is

17    noteworthy that CMU's complaint validates these concerns, given its allegations concerning the

18    sweeping breadth of its purported invention.  In particular, CMU alleges that "pattern dependent

19    filter" (DI 1, ¶90), "data dependent noise prediction," (*Id*. ¶92) and "data-dependent NPML" (*Id*.

20    ¶98), none of which appear in the asserted claims, are nonetheless all "industry terms"

21    synonymous with the broad concept allegedly "covered by"/"claimed by" its patents.  Similarly,

22    CMU asserts in paragraph 93 that "'NPFIR' (*e.g.* noise predictive FIR filter)," another term not

23    found in the claims, "refer[s] to the invention claimed in the Patents." *Id*. ¶93.  These allegations

24    highlight that CMU's patents claim "nothing more than the [] abstract idea underlying the

25    claims, thus preempting all use of that [] idea." *ChargePoint*, 920 F.3d at 7699.

26    **VIII. Conclusion**

27       Defendants respectfully request that their motion be granted.

28

Dated:  June 12, 2019                    Respectfully submitted,

                                        KING & SPALDING LLP


                                        By:  /s/  Steven J. Rizzi
                                        KENNETH L. STEINTHAL (SBN 268655)
                                        ksteinthal@kslaw.com
                                        KING & SPALDING LLP
                                        101 Second Street, Suite 2300
                                        San Francisco, CA 94105
                                        Telephone:   (415) 318-1211
                                        Facsimile:    (415) 318-1300

                                        STEVEN JAY RIZZI (admitted *pro hac vice*)
                                        srizzi@kslaw.com
                                        RAMY HANNA (admitted *pro hac vice*)
                                        rhanna@kslaw.com
                                        KING & SPALDING LLP
                                        1185 Avenue of the Americas, 35th Floor
                                        New York, NY 10036
                                        Telephone:   (212) 556-2100
                                        Facsimile:    (212) 556-2222

                                        Attorneys for Defendants LSI CORPORATION
                                        and AVAGO TECHNOLOGIES U.S. INC.,

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record via the Court's ECF system on June 12, 2019.

                                        /s/ Steven J. Rizzi
                                        Steven J. Rizzi

DEFTS' MTN FOR JUDGMENT OF INVALIDITY            CASE NO.  3:18-cv-04571-JD