1
2
3
4

Edward P. Sangster (SBN 121041)
ed.sangster@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel:  (415) 882-8200
Fax:  (415) 882-8220

5
6

*Counsel for Plaintiff*
*Carnegie Mellon University*

7
8
9

Kenneth L. Steinthal (State Bar No. 268655)
ksteinthal@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:   (415) 318-1211
Facsimile:    (415) 318-1300

10
11

*Counsel for Defendants LSI Corporation*
*and Avago Technologies U.S. Inc.*

12

*Additional counsel listed on signature pages*

13

**UNITED STATES DISTRICT COURT**

14

**NORTHERN DISTRICT OF CALIFORNIA**

15

**SAN FRANCISCO DIVISION**

16
17
18
19
20
21

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,<br><br>                                 Plaintiff,<br><br>vs.<br><br>LSI CORPORATION and AVAGO TECHNOLOGIES U.S. INC.,<br><br>                                 Defendants. | Case No.: 3:18-cv-04571-JD<br><br>**UPDATED JOINT CLAIM CONSTRUCTION AND PREHEARING STATEMENT UNDER PATENT L.R. 4-3**<br><br>Claim Construction Hearing: January 23, 2020<br>Time: 2:00 p.m.<br>Location: San Francisco, Courtroom 11, 19th Floor |

22
23
24
25
26
27
28

Plaintiff Carnegie Mellon University ("CMU") and Defendants LSI Corporation and Avago Technologies U.S. Inc. (collectively, "LSI" or "Defendants") submit this Updated Joint Claim Construction and Prehearing Statement in accordance with Patent L.R. 4-3, this Court's Standing Order for Claim Construction in Patent Cases, and the Amended Scheduling Order issued September 3, 2019 (Dkt. 142).  The two asserted patents in this case are U.S. Patent 6,201,839 ("'839 Patent") and U.S. Patent 6,438,180 ("'180 Patent") (collectively, "CMU Patents"), copies of

which are provided as **Exhibits A** and **B** respectively hereto.[1]  The '180 Patent is a continuation-in-part of the '839 Patent.  The Asserted Claims are claim 4 of the '839 Patent and claim 2 of the '180 Patent.[2]  Each of the CMU Patents was subject to an *ex parte* reexamination.  Copies of the complete original and reexamination prosecution histories for the CMU Patents are available to the Court upon request.

## I.  CONSTRUCTION OF CLAIM TERMS ON WHICH THE PARTIES AGREE

The parties agree to the constructions set forth below for certain claim terms in the Asserted Claims of the CMU Patents.

| Claim Language | Agreed-Upon Construction |
|---|---|
| **"branch metric value"** and **"metric value"**<br><br>Claim 4 of the '839 Patent<br>Claim 2 of the '180 Patent | The numerical value of a "branch." |
| **"branch"**<br><br>Claim 4 of the '839 Patent<br>Claim 2 of the '180 Patent | A potential transition between two states (nodes) immediately adjacent in time in a "trellis." |
| **"trellis"**<br><br>Claim 4 of the '839 Patent | A graphical representation of the progression of states of a communications channel in time, wherein states are depicted as nodes and potential transitions between states are depicted as lines or arrows. |
| **"signal sample"**<br><br>Claim 4 of the '839 Patent<br>Claim 2 of the '180 Patent | A value of a signal at a certain point in time. |
| **"function"**<br><br>Claim 4 of the '839 Patent<br>Claim 2 of the '180 Patent | A mathematical relation that uniquely associates members of a first set with members of a second set. |

---

[1] To the extent is not listed herein as agreed to or disputed, the parties agree that such term shall have its plain and ordinary meaning to a person of skill in the art in light of the intrinsic record.
[2] Claim 2 of the '180 Patent is a dependent claim that depends from claim 1.  All citations to the claim language herein of the '180 Patent are to claim 2, although the particular language may appear in claim 1.

1

| Claim Language | Agreed-Upon Construction |
|---|---|
| **"certain time index"**<br><br>Claim 4 of the '839 Patent<br>Claim 2 of the '180 Patent | A certain point in time. |
| **"noise"**<br><br>Claim 2 of the '180 Patent | An unwanted disturbance in a signal. |

## II.     DISPUTED CLAIM TERMS AND IDENTIFICATION OF MOST SIGNIFICANT TERMS

The parties dispute the construction of the following seven (7) terms in the Asserted Claims:

(1)   "branch metric function" in claim 4 of the '839 Patent and claim 2 of the '180 Patent;

(2)   "signal-dependent branch metric function" in claim 4 of the '839 Patent and claim 2 of the '180 Patent;

(3)   "a set of signal-dependent branch metric functions" in claim 4 of the '839 Patent and claim 2 of the '180 Patent;

(4)   "Viterbi-like detector" in claim 4 of the '839 Patent;

(5)   "each sample corresponds to a different sampling time instant" in claim 4 of the '839 Patent;

(6)   "signal-dependent noise" in claim 2 of the '180 Patent; and

(7)   "correlated noise" in claim 2 of the '180 Patent.

Each of the seven terms is significant and the listing herein is not intended to reflect any particular order of importance.  Each party's proposed constructions and identified support thereto are presented in **Exhibit C** hereto.

## III.     ANTICIPATED LENGTH AND TIME NECESSARY FOR THE CLAIM CONSTRUCTION HEARING

2

1  The Claim Construction Hearing is currently scheduled at 2:00 p.m. on January 23, 2020, and

2  the Tutorial is currently scheduled at 11:00 a.m. on January 16, 2020.  Dkt. 142.

3  **IV.     IDENTIFICATION OF WITNESSES FOR CLAIM CONSTRUCTION HEARING**

4  Neither party intends to present any witnesses live at the Claim Construction Hearing.

5  CMU expects to rely on testimony (in the form of declarations and/or deposition) from Prof.

6  Steven W. McLaughlin, Dean of the College of Engineering at the Georgia Institute of Technology

7  in support of its claim construction arguments and to respond to Defendants' claim construction

8  arguments, including their assertion that certain claim terms are indefinite.  Prof. McLaughlin will

9  provide testimony related to: the components and operation of a hard disk drive (HDD), including

10 how the sequence detector in a read channel operates and how such operations is complicated by

11 noise in the system, including media noise; the skill level of a person skilled in the art; and how a

12 person skilled in the art would understand the disputed claim terms in the context of the CMU

13 Patents, including the terms that Defendants assert are indefinite in light of the Court's statement that

14 those terms were not "off the table."  Dkt. 93 at page 42, lines 8-23.  Copies of Prof. McLaughlin's

15 declarations are provided as **Exhibits D and E** hereto.  CMU also currently intends to have Prof.

16 McLaughlin available for the Tutorial, subject to Prof. McLaughlin's availability.

17 With regard to Defendants' belated suggestion below that the Court appoint an expert to

18 assist with claim construction, CMU respectfully submits that the volume of the intrinsic record does

19 not justify the appointment of a court-appointed technical expert, particularly because the claims

20 already have been construed and an ample, plain language record of those claim construction

21 proceedings exists.  CMU further notes that Defendants possessed the reexamination record when

22 the parties filed their original Joint Claim Construction and Prehearing Statement on April 5, 2019

23 (Dkt. 78), but did not suggest then that the Court needed an expert to assist with claim construction.

24 Identifying, vetting and retaining such an expert now undoubtedly would delay claim construction

25 proceedings (originally set for June 27, 2019) once again at Defendants' behest.  Furthermore,

26 regardless of any potential delay, the mere addition of the reexamination materials does not justify

27

28

3

1  an appointment, as the reexamination resulted in confirmation of patentability, not amendment of the

2  claims.

3        Defendants believe expert testimony is necessary only for Defendants' indefiniteness

4  challenges, which involve two discrete claim terms appearing in only one of the two CMU patents,

5  and which the Court already indicated will be dealt with in a separate proceeding.   For purposes of

6  the claim construction hearing, Defendants thus expect to offer expert testimony from Dr. Emina

7  Soljanin, Professor of Electrical and Computer Engineering at Rutgers University, solely to rebut

8  Prof. McLaughlin's opinions.  Prof. Soljanin's testimony will be based on the intrinsic record of the

9  patents-in-suit, and how a person of ordinary skill in the art in the relevant period would understand

10  the disputed claim terms in the context of that record.  A copy of Dr. Soljanin's declaration is

11  attached hereto as **Exhibit F.**   Defendants also currently intend to have Dr. Soljanin available for

12  the tutorial.  In addition, given the voluminous intrinsic factual record in this case, which includes a

13  substantial volume of highly technical material -- the vast majority of which was provided during the

14  reexamination proceedings and thus not part of the intrinsic record during the Marvell litigation --

15  Defendants respectfully suggest that the Court may benefit from the assistance of a Court-appointed

16  expert or technical consultant, as the Court sees fit, to assist the Court in analyzing the intrinsic

17  record and resolving the parties' claim construction disputes, which present different issues than

18  those addressed by the Marvell court.  As CMU noted at the August 1, 2019, hearing, a technical

19  consultant was available to the Marvell court for the claim construction proceedings in the Marvell

20  litigation.

21  **V.      IDENTIFICATION OF FACTUAL FINDINGS REQUESTED FROM THE COURT**

22        **RELATED TO CLAIM CONSTRUCTION**

23        The parties' positions are set forth below:

24  **CMU's Requested Factual Findings**

25        Patent Local Rule 4-3(f) requires the parties to identify "any factual findings requested from

26  the Court related to claim construction." CMU respectfully requests that, if necessary, the Court

27  make factual findings with respect to Defendants' indefiniteness arguments for claim 4 of the '839

28

4

Patent.  *See, e.g., Berkheimer v. HP Inc.*, 881 F.3d 1360, 1363 (Fed. Cir. 2018) (district court's indefinite determination included "subsidiary factual findings" based on expert declaration); *Teva Pharm. USA v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) (recognizing "factual finding" by court with regard to dispute between experts as to whether "a certain term of art had a particular meaning to a person of ordinary skill in the art at the time of the invention"); *Eli Lilly and Co. v. Teva Parenteral Medicines, Inc.*, 848 F.3d 1357, 1371 (Fed. Cir. 2017) ("[T]he district court's underlying determination, based on extrinsic evidence, of what a person of ordinary skill would understand 'vitamin B12' to mean in different contexts is a question of fact.").  CMU's requested factual findings will relate to the knowledge and understanding that a person of ordinary skill in the art would have concerning the scope and meaning of the following phrases when read in the context of the intrinsic record:

- "Viterbi-like detector" in claim 4 of the '839 Patent; and
- "each sample corresponds to a different sampling time instant" in claim 4 of the '839 Patent.

In particular, CMU requests that the Court find each of identified claim terms has an objective meaning to those skilled in the art, which objective meaning informs, with reasonable certainty, those skilled in the art about the scope of the claimed invention.

CMU further requests that the Court find that the evidence cited by CMU and Defendants, including the testimony of Prof. McLaughlin, supports CMU's claim construction proposals and does not support Defendants' claim construction proposal or assertions of indefiniteness.  *See Teva Pharm.*, 135 S. Ct. at 837-38 ("Claim construction is a question of law with underlying questions of fact.").  For example, CMU requests that the Court find that:

- A person skilled in the art would understand that a "Viterbi-like detector" recited in claim 4 of the '839 Patent is a detector that uses a "Viterbi-like algorithm," where a "Viterbi-like algorithm" is an algorithm that is or is similar to the Viterbi algorithm, which is an iterative algorithm that uses a trellis to determine the best sequence of hidden states (in this case, written symbols) based on observed events

(in this case, observed readings that represent the written symbols), where the determined sequence is indicated by the best path through the trellis and is determined using branch metric values calculated for branches of the trellis;

- A person skilled in the art would understand that "each sample corresponds to a different sampling time instant" recited in claim 4 of the '839 Patent means that each signal sample is from a different point in time;

- A person skilled in the art would understand that a "branch metric function" as recited in both of the Asserted Claims is a two-argument/input function, with the two arguments being (1) one or more signal samples values and (2) one or more target values, and the output of the branch metric function is a branch metric value for a branch;

- A person skilled in the art would understand that a "signal-dependent branch metric function" as recited in both of the Asserted Claims is a branch metric function that accounts for the signal-dependent structure of the media noise;

- A person skilled in the art would understand that "a set of signal-dependent branch metric function" as recited in both of the Asserted Claims requires two or more signal-dependent branch metric functions;

- A person skilled in the art would understand that "signal-dependent noise" as recited in claim 2 of the '180 Patent means media noise in the readback signal whose noise structure is attributable to a specific sequence of symbols (e.g., written symbols); and

- A person skilled in the art would understand that "correlated noise" as recited in claim 2 of the '180 Patent means noise in the signal samples, such as that caused by coloring by front-end equalizers, media noise, media nonlinearities, and magnetoresistive (MR) head nonlinearities, that has a tendency to vary together.

6

1

**<u>Defendants' Requested Factual Findings</u>**

2       Claim construction is a question of law to be decided by the Court.  *O2 Micro Int'l Ltd. V.*

3  *Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  Defendants informed CMU

4  that no factual findings on claim constructions are necessary because the meanings of the disputed

5  terms can and should be decided solely based on the intrinsic record.  CMU disagreed, indicating its

6  insistence on offering extrinsic evidence.  Defendants also disagree that CMU's "factual findings"

7  are anything but a repetition of its claim construction positions.  To the extent the Court concludes it

8  is necessary to resolve disputed issues of fact in connection with claim construction, and is willing to

9  consider CMU's "factual findings," Defendants offer the following competing "factual findings" for

10  the Court's consideration.  Specifically:

11      • A person of ordinary skill would understand that a "branch metric function," as

12         recited in both of the Asserted Claims, is a mathematical relation that uniquely

13         associates signal samples with branch metric values;

14      • A person of ordinary skill would understand that a "signal-dependent branch metric

15         function," as recited in both Asserted Claims, is a branch metric function that

16         accounts for the noise attributable to the specific signal sequence associated with one

17         branch, *i.e.*, when computing the branch metric value of a first branch, the method

18         selects the branch metric function that is specific to the signal dependent noise

19         associated with that branch, which differs from the function for any other branch;

20      • A person of ordinary skill would understand that "a set," as recited in both Asserted

21         Claims has a plain and ordinary meaning, where one articulation of such meaning is a

22         "finite or infinite number of objects of any kind, of entities, or of concepts that have a

23         given property or properties in common," which can easily be applied in the full

24         phrase "a set of signal-dependent branch metric functions";

25      • A person of ordinary skill would understand that "signal-dependent noise" means

26         noise in a received signal that is attributed to the specific sequence of symbols; and

27

28

7

- A person of ordinary skill would understand that "correlated noise" means noise among signal samples that tends to vary together.

As to Defendants' indefiniteness challenges, Defendants request the following factual findings:

- A person of ordinary skill would not understand with reasonable certainty the scope of the term "Viterbi-like" or "Viterbi-like detector" as recited in claim 4 of the '839 Patent.

- The term(s) "Viterbi-like" or "Viterbi-like detector" as recited in claim 4 of the '839 patent are not terms of art.

- A person of ordinary skill would not understand with reasonable certainty the scope of the term "each sample corresponds to a different sampling time instant" as recited in claim 4 of the '839 patent.

- A person of ordinary skill would not have any reasonable understanding of the relationship between limitations "certain time index" and "each sample corresponds to a different sampling time instant" as recited in claim 4 of the '839 patent.

- A person of ordinary skill would not understand the temporal sequence of the "selecting a branch metric function for each of the branches at a certain time index from a set of signal-dependent branch metric functions" step and the "applying each of said selected functions . . . for which the applied branch metric function was selected" step as recited in claim 4 of the '839 patent.

Dated:  October 7, 2019

By:  */s/ Chrisopher Verdini (with permission)*

Edward P. Sangster (SBN 121041)
ed.sangster@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel:  (415) 882-8200
Fax:  (415) 882-8220

By:  */s/ Steven Rizzi*

STEVEN JAY RIZZI (admitted *pro hac vice*)
srizzi@kslaw.com
RAMY HANNA (admitted *pro hac vice*)
rhanna@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 35th Floor
New York, NY 10036
Telephone:  (212) 556-2100

8

Patrick J. McElhinny, *pro hac vice*
patrick.mcelhinny@klgates.com
Mark G. Knedeisen, *pro hac vice*
mark.knedeisen@klgates.com
Christopher M. Verdini, *pro hac vice*
christopher.verdini@klgates.com
Anna Shabalov, *pro hac vice*
anna.shabalov@klgates.com
**K&L Gates LLP**
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
(412) 355-6500

Theodore J. Angelis, *pro hac vice*
theo.angelis@klgates.com
**K&L Gates LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580

*Counsel for Plaintiff*
*Carnegie Mellon University*

Facsimile:   (212) 556-2222
KENNETH L. STEINTHAL (State Bar No.
268655)
ksteinthal@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:   (415) 318-1211
Facsimile:   (415) 318-1300

*Counsel for Defendants LSI Corporation and*
*Avago Technologies U.S. Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on October 7, 2019.

*/s/ Steven Rizzi*
Steven Rizzi

## CERTIFICATION PURSUANT TO CIV. L. R. 5-1(i)(3)

Pursuant to Civil Local Rule 5-1(i)(3), I hereby certify that concurrence in the filing of this document has been obtained from the signatories for whom a signature is indicated by a conformed signature (/s/). I have on file records to support this concurrence for production for the Court if so ordered.

Dated: October 7, 2019          */s/ Steven Rizzi*
Steven Rizzi

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UPDATED JOINT CLAIM CONSTRUCTION AND PREHEARING
STATEMENT UNDER PATENT L.R. 4-3
CASE NO. 3:18-CV-04571-JD