# K&L GATES

September 14, 2020

**VIA CM/ECF**

The Honorable James Donato
U.S. District Court for the Northern District of California
450 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA  94102

Patrick J. McElhinny
patrick.mcelhinny@klgates.com

T +1 412 355 6334
F +1 412 355 6501

**Re:**  *Carnegie Mellon University v. LSI Corporation et al.*, **Case No. 3:18-cv-04571-JD**

Dear Judge Donato:

Carnegie Mellon University ("CMU") writes in response to Defendants' August 26 letter (Dkt. 187) regarding the deposition of Dr. Aleksandar Kavcic, one of the named inventors of the Patents-in-Suit.  Citing a nearly four-year old agreement Dr. Kavcic signed with LSI's parent, Broadcom Corp., Defendants seek to unfairly obstruct the efforts of CMU and Dr. Kavcic to enforce the Patents-in-Suit.  Both CMU and Dr. Kavcic have agreed that he will appear for a deposition, but Defendants effectively ask this Court to grant them an unwarranted tactical advantage by forcing Dr. Kavcic to sit for his deposition without judicial confirmation that his appearance (and consultation with his counsel of choice to prepare) does not breach his agreement with Broadcom regarding an entirely separate patent litigation involving technology materially different from the Patents-in-Suit.  The Court should reject Defendants' attempt to impose on Dr. Kavcic the Hobson's choice of giving sworn testimony without consulting his counsel of choice or risking that such consultation will lead to more claims by Broadcom that he has breached the agreement.

## I.    FACTUAL BACKGROUND

In 2016, Dr. Kavcic signed an agreement to consult with Broadcom relating to litigation brought by the University of Minnesota (represented by K&L Gates) against Defendants (the "Agreement").  The UMN patent involves technology to *write* data to hard disk drives, while the Patents-in-Suit involve technology to *read* data from hard disk drives.  Dr. Kavcic completed his services under the Agreement in 2016, without ever receiving any LSI or Broadcom trade secret or confidential information.  *See* No. 3:20-01246-JD, Dkt. 23 at ¶¶ 38-41; Dkt. 53-1 at 4.  CMU commenced this action in September 2018.  Nonetheless, Defendants contend that the four year-old Agreement restricts Dr. Kavcic's ability to consult with CMU and his counsel of choice in connection with this action, thereby essentially invoking either the inevitable disclosure doctrine or turning the Agreement into a restraint on Dr. Kavcic's professional activities, both of which California law firmly rejects.  *See, e.g.*, *Golden v. Cal. Emerg. Physicians Med. Grp.*, 896 F.3d 1018, 1024 (9th Cir. 2018), *reh'g denied* (Aug. 13, 2018) ("California's legislature has clearly expressed its disapproval of contracts that restrain lawful business and professional activities, and we are bound to heed that policy judgment wherever its logic applies."); *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (Cal. Ct. App. 2002) ("Lest there be any doubt about our holding, our rejection of the inevitable disclosure doctrine is complete.").

Despite the fact that the Agreement was responsive to discovery requests CMU served a full year earlier, Defendants first disclosed the existence of the Agreement to CMU only in October 2019, when Dr. Kavcic appeared at the deposition of Dr. Emina Soljanin, Defendants' claim construction expert. Defendants asserted that the Agreement prohibited Dr. Kavcic from assisting CMU but refused to provide CMU with a copy (to date, CMU still has not seen the unredacted Agreement). Defendants subsequently threatened Dr. Kavcic with litigation for allegedly breaching the Agreement, which Dr. Kavcic denied. Dr. Kavcic retained separate counsel and proactively brought a declaratory judgment action on February 13, 2020 to resolve their dispute. That action is pending before the Court at No. 3:20-cv-01246-JD. Broadcom has asserted a counterclaim against Dr. Kavcic for breach of the Agreement, seeking damages and injunctive relief.

After serving a deposition notice in August 2019, Defendants demanded Dr. Kavcic's deposition in March 2020. CMU and Dr. Kavcic advised Defendants of his concerns about sitting for a deposition in light of Defendants' threats and pending counterclaim, and sought Defendants' assurance that they would not assert that consulting with K&L Gates to prepare for the individual and Rule 30(b)(6) deposition would violate any of his purported obligations under the Agreement. Defendants refused to provide such assurance and also have unequivocally asserted that they will seek discovery of any communications between CMU's counsel and Dr. Kavcic in preparation for his deposition. As a result, Dr. Kavcic filed a Motion to Quash or Modify the deposition subpoena; that motion is pending before the Court at No. 3:20-mc-80121-JD.

Refusing to wait for the Court to address those pending matters, Defendants now seek to further whipsaw CMU and Dr. Kavcic. Defendants demand that Dr. Kavcic sit for a deposition, but plainly intend to use Dr. Kavcic's preparation for that deposition as evidence that he is breaching the Agreement. Defendants feign reasonableness by claiming that Dr. Kavcic can provide "factual testimony" without violating the Agreement, but fail to inform the Court that they have asserted that Dr. Kavcic would violate the Agreement by engaging "directly or indirectly in strategy and analysis discussions [with counsel] that would fall within the purview of expert consulting, whether it be in connection with depositions taken by CMU (such as the Soljanin deposition), or any of the matters in dispute, such as claim construction, infringement, validity and damages." Defendants in effect contend CMU must somehow force Dr. Kavcic to appear for a deposition to testify on central issues, as a result of which he will face the dual threats of Broadcom's pending breach of contract claim and the intended invasion of his (and CMU's) attorney-client privilege.

## II.     REASONS TO DENY DEFENDANTS' REQUESTED RELIEF

For the following reasons, CMU respectfully requests that the Court foreclose Defendants' efforts to prevent Dr. Kavcic from consulting with his counsel of choice in connection with his deposition and deny their request for 45 days of additional discovery after the completion of the deposition.

*First*, Dr. Kavcic has already agreed to testify. As plainly stated in his Motion to Quash, he "is not objecting to being deposed; he is merely requesting that his deposition be rescheduled to a date that does not obstruct his declaratory judgment action" seeking judicial guidance on, among other things, his ability to defend his invention from attack by Defendants and "what is permissible for him to discuss" with CMU and counsel of his choice. *See* No. 3:20-mc-80121-JD, Dkt. 1-1 at 4-6. Before he does so, Dr. Kavcic, facing counterclaims of breach, reasonably seeks confirmation that he may consult counsel of his choice and prepare to testify without violating the Agreement.

*Second*, Dr. Kavcic's willingness to testify moots the issue of whether CMU could somehow compel a third party adjunct professor—not a CMU employee—to appear for a deposition without the ability to communicate freely with counsel. CMU long ago produced to Defendants Dr.

2

Kavcic's appointment letter.  It establishes that Dr. Kavcic is not presently and has not during the course of this litigation been a CMU employee (although he is a long-time K&L Gates client).  Undeterred by the absence of an employment relationship, Defendants note that Dr. Kavcic signed an assignment agreement that states Dr. Kavcic will provide CMU "with all pertinent facts and documents relating to said invention and [patent] as may be known and accessible to Assignor and will testify as to the same in any interference, litigation or proceeding related thereto."  That agreement, however, does not require him to testify without being able to consult with counsel of his choice.  Furthermore, the assignment agreement bolsters Dr. Kavcic's claim about the limited scope of the Agreement.  It defies logic to contend, as Defendants do, that the parties had a "meeting of the minds" that the Agreement would preclude Dr. Kavcic from fulfilling his obligations under the assignment agreement and assisting CMU in this litigation, just as he had done in CMU's prior lawsuit for infringement of the Patents-in-Suit against Defendants' main competitor, which Defendants well knew about when they signed the Agreement.

*Third*, Defendants complain about the delay in Dr. Kavcic's deposition, but that delay results from their own transparent use of the Agreement for unfair strategic advantage to prejudice CMU and Dr. Kavcic.  As set forth in Dr. Kavcic's filings, he: (i) completed his consulting services to Broadcom in 2016 (well before CMU commenced this litigation in 2018); (ii) has not been asked to perform any other tasks under the Agreement; and (iii) did not receive, review, request or have access to any LSI or Broadcom information, confidential or otherwise.  *See* No. 3:20-cv-01246-JD, Dkt. 53-1 at 4; Dkt. 23 at ¶¶ 38-39.  In fact, to avoid delay, CMU and Dr. Kavcic repeatedly advised Defendants that Dr. Kavcic will appear for his deposition if only Defendants assured that his preparation with CMU's counsel for the deposition would not violate any of his purported obligations under the Agreement.  Had Defendants provided such assurances, they could have taken Dr. Kavcic's deposition months ago.  Instead, Defendants refused, betraying the emptiness of their assertion that Dr. Kavcic "providing factual testimony in the litigation between CMU and the Defendants would not violate his consulting agreement with Broadcom" (emphasis in original).

*Finally*, there is no reason to extend the fact discovery period or the overall schedule.  Fact discovery has been open for nearly two years.  It has already been extended four times.  Moreover, Dr. Kavcic provided approximately 21 hours of deposition testimony in the *Marvell* case covering the same two patent claims, including Rule 30(b)(6) testimony on behalf of CMU, and more than a full day of trial testimony.  CMU produced those transcripts to Defendants more than 21 months ago, in December 2018.  It is inconceivable that Defendants will elicit enough new information in another deposition of Dr. Kavcic to justify 45 days for follow-up discovery.

Accordingly, CMU respectfully requests that the Court deny Defendants' Motion and order that, in light of Defendants' concession that Dr. Kavcic can provide factual testimony without violating the Agreement, Dr. Kavcic shall appear for a deposition (including as a Rule 30(b)(6) designee if CMU so designates him) at a mutually convenient time no earlier than October 14, 2020, but (i) he is entitled to use counsel of his choice to prepare for the deposition and (ii) Defendants and Broadcom will not be entitled to discovery of the communications between Dr. Kavcic and his counsel regarding the deposition and may not use his deposition or his efforts to prepare for that deposition as evidence of breach of the Agreement.

If Defendants believe they need follow-up discovery as a result of information disclosed to them for the first time in Dr. Kavcic's deposition, they may take that discovery after the September 28, 2020 existing deadline for the close of fact discovery, but must complete it before November 9, 2020, the date opening expert reports are due.

Respectfully submitted,

/s/ Patrick J. McElhinny
Counsel for Plaintiff Carnegie Mellon University