KENNETH L. STEINTHAL (State Bar No. 268655)
ksteinthal@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1211
Facsimile: (415) 318-1300

STEVEN JAY RIZZI (admitted *pro hac vice*)
srizzi@kslaw.com
RAMY HANNA (admitted *pro hac vice*)
rhanna@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 35th Floor
New York, NY 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Attorneys for Defendants LSI CORPORATION and
AVAGO TECHNOLOGIES U.S. INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>LSI CORPORATION AND AVAGO TECHNOLOGIES U.S. INC.,<br><br>Defendants. | Case No. 3:18-cv-04571-JD<br><br>**DEFENDANTS' SUMMARY JUDGMENT MOTION REGARDING ACCUSED PRODUCTS SUBJECT TO THE COURT'S ORDER ON IMPLIED LICENSE (D.I. 196)** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on February 18, 2021 at 10:00 a.m., or as soon thereafter as may be heard, in Courtroom 11 of the above-captioned Court, located at the United States Court House, 450 Golden Gate Avenue, 19th floor, San Francisco, CA 94102, defendants LSI Corporation and Avago Technologies, U.S., Inc. (collectively, "Defendants"), by their attorneys, will move this Court for an order entering judgment against Plaintiff Carnegie Mellon University ("Plaintiff" or "CMU") pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities in support thereof, all pleadings and papers on file in this action, and such other and further matters as the Court may consider.

## STATEMENT OF RELIEF SOUGHT

Defendants request that summary judgment be granted in their favor on their implied license defense with respect to alleged infringement by Defendants in connection with products supplied to Seagate and HGST. In particular, Defendants respectfully request that the Court issue an order confirming the following:

1. The "Accused Devices" supplied under the implied licenses found by the Court's Order Re Partial Summary Judgment (D.I. 196) are the devices developed for and supplied to Seagate or HGST during the period of September 1, 2011, through April 3, 2011, which are listed in Appendix A attached hereto (the "Covered Devices");

2. All "Accused Simulators" except those for which simulation results are referenced in documents bearing Bates numbers LSI-04571-0083913 and LSI-04571-008996 were executed or supplied under the implied licenses found by the Court's Order Re Partial Summary Judgment (D.I. 196) (the "Covered Simulators"); and

3. The Covered Devices and Covered Simulators are immune from liability, and are thus excluded from the damages base for any reasonable royalty damages sought by CMU pursuant to its damages contentions under Patent Local Rule 3-8.

**TABLE OF CONTENTS**

I.   Introduction and Background ................................................................................. 1

II.  Disputes That Precluded Agreement on the List Requested by the Court................... 3

III. Argument ............................................................................................................... 4

    A.  Accused Devices Supplied to Seagate and HGST Are Covered by an Implied License and Excluded from CMU's Royalty Base........................ 4

        1.  CMU's Position Contradicts Its Damages Contentions and Representations to the Court................................................................. 5

        2.  The Court Already Rejected CMU's Arguments in the OPSJ ......................................................................................................... 7

    B.  Accused Simulators Executed by or for Seagate and HGST During Development of Devices Are Covered by an Implied License ........................ 8

IV.  Conclusion ........................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carnegie Mellon Univ. v. Marvell Tech. Gr., Ltd.*,
    807 F.3d 1283 (Fed. Cir. 2015) ................................................................................................ 5

*Largan Precision Co, Ltd v. Genius Elec. Optical Co.*,
    No. 13-CV-02502-JD, 2015 WL 2063988 (N.D. Cal. May 4, 2015) ....................................... 8

*Martin v. Biaggini*,
    No. 12-CV-06287-JD, 2014 WL 1867068 (N.D. Cal. May 7, 2014) ....................................... 8

**Other Authorities**

L.R. 7-9 ............................................................................................................................................ 8

Patent L.R. 3-8 ........................................................................................................................... 1, 5

Patent L.R. 3-2 ................................................................................................................................ 7

## I. INTRODUCTION AND BACKGROUND

Defendants LSI Corporation and Avago Technologies U.S. Inc. ("LSI" or "Defendants") submit this motion pursuant to the Court's September 18, 2020 Order re Partial Summary Judgment (the "OPSJ") to address "the specific LSI products" covered by the implied license found by the OPSJ. (D.I. 196 at 2.) The parties were unable to reach complete agreement on a stipulation listing the covered products. For the Court's convenience, LSI attaches as Exhibit 1 a draft stipulation reflecting the points of disagreement. The need for this second motion for summary judgment arose because, contrary to the Court's direction to confirm the precise extent to which the OPSJ has reduced CMU's infringement claim, CMU is instead attempting to relitigate issues decided by the OPSJ and conceded by CMU, as explained below.

Since before Carnegie Mellon University ("CMU") filed this case, LSI made clear to CMU that progress toward resolution required that CMU's demand account for the fact that LSI's largest customer for the accused products—Seagate Technology PLC ("Seagate")—was indisputably licensed under the patents, and that sales to at least Seagate must be excluded from CMU's royalty base based on Seagate's "have made" rights. CMU refused, and pressed ahead with multiple baseless arguments in a futile attempt to avoid the clear impact of its license to Seagate.

Tellingly, however, in its damages contentions, served in March 2019 pursuant to Local Patent Rule 3-8, CMU accounted for the contingency of losing on LSI's have made rights defense with respect to Seagate, and provided two sets of alternate contentions—one premised on a royalty base with Seagate products, and one without:

| Royalty Base | Units | Royalty Rate | Reasonable Royalty |
|---|---|---|---|
| Worldwide (LSI Market Share) | | | |
| U.S. (Ordering Location of Customer) | | | |
| U.S. (Ship to U.S. Only) | | | |

TABLE 2a

| Royalty Base Excluding Seagate | Units | Royalty Rate | Reasonable Royalty |
|---|---|---|---|
| Worldwide (LSI Market Share) | | | |
| U.S. (Ordering Location of Customer) | | | |
| U.S. (Ship to U.S. Only) | | | |

TABLE 2b

(Ex. 2,[1] Pl.'s Damages Contentions at 8.)

The math is straightforward. By CMU's own admission, if LSI prevailed on its have made rights defense with respect to Seagate, and Seagate products were thus excluded from the royalty base, the damages sought by CMU would be reduced by 65%. Relying on CMU's damages contentions, LSI requested leave to file an early summary judgment motion on the issue of "have made" rights.[2] (D.I. 93 at 12-17.) To facilitate a potential settlement, the Court granted LSI's request. (*Id.* at 16-17.) CMU's counsel did not dispute that resolution of the "have made" rights issue in LSI's favor would significantly reduce CMU's potential recovery, and thus facilitate settlement. (*See id.*)

Discovery in the ensuing months revealed that LSI's have made rights defense has an even greater impact on CMU's potential recovery, because LSI learned that its second largest customer—Hitachi Global Storage Technologies ("HGST")—also had a license from CMU with have made rights. Applying the methodology in CMU's damages contentions to products supplied to HGST shows that more than 80% of CMU's claimed damages are eliminated based on these two customers' have made rights. Consistent with CMU's clear admissions in its damages contentions, at no point throughout the briefing and argument on LSI's summary judgment motion did CMU dispute the impact of LSI's have made rights defense on CMU's damages claim.

In validating LSI's have made rights defense, the Court in the OPSJ noted that controlling law made "short work" of LSI's motion, and that CMU's arguments in opposition were "not well taken." (D.I. 196 at 7.) The Court referenced LSI's unchallenged representation that the defense "bars 'about 90% of the total damages sought by CMU'" and directed the parties to answer "[t]he question of which specific LSI products are covered by the have made rights," by "meet[ing] and confer[ing] on a joint list that identifies the accused products supplied under the implied license," to confirm the precise impact of the OPSJ on CMU's infringement claim. (*Id.* at 2, 9.)

---

[1] Citations in the format "Ex. _" or "Exhibit _" are to the Declaration of Steven J. Rizzi, filed herewith.

[2] LSI's analysis of its transactional sales data at the time indicated that Seagate accounted for closer to 70% of the accused products.

Unfortunately, the meet-and-confer process did not lead to an agreed list, and revealed that CMU instead seeks to backtrack and reargue issues clearly decided by the Court in the OPSJ. Incredibly, CMU now denies that devices developed for and supplied to Seagate and HGST are covered by the implied license found by the Court, and thus excluded from the royalty base in accordance with CMU's own damages contentions. Further contradicting the Court's Order, CMU is also attempting to reargue its contention that, in developing devices later supplied to Seagate and HGST—which indisputably *are* covered by LSI's implied license—LSI previously executed "Accused Simulators" that supposedly are *not* covered. But the Court already rejected this "timing" argument:

> CMU says that LSI may have engaged in infringing practices before Seagate and HGST exercised their have made rights. . . . But it has not proffered evidence of such conduct during the relevant 2011-18 time frame. CMU speculates about possibilities, but does not raise a genuine dispute of material fact based on evidence.

(D.I. 196 at 9.)

The draft joint stipulation of Exhibit 1 reflects the points on which the parties were able to tentatively agree, as well as each side's respective positions with respect to issues in disagreement. For the reasons set forth herein, LSI respectfully requests that the Court enter an order incorporating LSI's proposed language on such issues.

## II. DISPUTES THAT PRECLUDED AGREEMENT ON THE LIST REQUESTED BY THE COURT

Although the parties appear to agree on a list of "Accused *Devices*" supplied to Seagate and HGST—attached to this motion as Appendix A—CMU now inexplicably refuses to acknowledge that they are "supplied *under the implied license*" found by the OPSJ, and therefore immune from liability and excluded from the royalty base. (*See* Ex. 3, Verdini Dec. 4, 2020 Email at 1, 3). However, there is no genuine issue of material fact that the devices in Appendix A are covered by LSI's implied license, as the Court already resolved this issue in LSI's favor.

Similarly, the parties were unable to reach agreement on a list of what CMU calls "Accused *Simulators*," because CMU flouts the order by refusing to identify the "specific" Accused Simulators covered by the implied license, or conversely, which specific Accused Simulators

remain subject to liability.

## III. ARGUMENT

### A. Accused Devices Supplied to Seagate and HGST Are Covered by an Implied License and Excluded from CMU's Royalty Base

There are two related disputes concerning the "Accused Devices" portion of the stipulation. First, with respect to paragraph 1 of the stipulation, CMU's proposed language describing the list of devices in Appendix A is meaningless, and simply states that the listed devices were "supplied to Seagate and HGST" during the relevant time period. In other words, contrary to the Court's ruling, and its clear directive to provide a list of products "supplied *under the implied license*," CMU refuses to include this language in the stipulation. When pressed for an explanation, CMU provided none. (*See* Ex. 3, Verdini Dec. 4, 2020 Email at 1). The competing provisions are set forth below:

| LSI's Position | CMU's Position |
|---|---|
| The Accused Devices supplied under the implied licenses found by the Court's Summary Judgment Order are the devices which were developed for and supplied to Seagate or HGST during the period of September 1, 2011 through April 3, 2018, which are listed in Exhibit A attached hereto. ("Covered Devices") | The Accused Devices supplied to Seagate and HGST during the period of September 1, 2011 through April 3, 2018 are the devices listed in Exhibit A attached hereto. During the period between September 1, 2011 and April 3, 2018, LSI supplied approximately 998 million Accused Devices to Seagate and HGST and approximately 262 million Accused Devices to other customers. |

(Ex. 1 at 2.) There is no legitimate basis for CMU to object to LSI's proposed language.

In addition, although CMU agrees that all accused devices listed in Appendix A were supplied to licensed customers Seagate and HGST, having lost the OPSJ, it now takes the incredible position that the Court's order had no real impact on the case, because CMU is supposedly still free to use sales to licensed customers to pursue a yet-to-be-disclosed damages theory that contradicts its own damages contentions. CMU's attempt to relitigate the Court's ruling is made clear by the table below, which compares the parties' competing proposals for paragraph 3 of the stipulation:

| LSI's Position | CMU's Position |
|---|---|
| The Covered Devices [listed in Appendix A] and Covered Simulators are immune from | CMU seeks damages in this case in the form of a reasonable royalty. The reasonable royalty adequate to compensate CMU for Defendants' alleged use of the patented methods |

| | |
|---|---|
| liability and are thus excluded from the damages base for any reasonable royalty damages sought by CMU pursuant to CMU's damages contentions served under Local Patent Rule 3-8 | will be based on the parties' expectations at the time of the hypothetical negotiation (likely to occur between 2001 to 2003), and will include consideration of the circumstances at the time of the hypothetical negotiation, evidence regarding the extent of Defendants' expected uses of the patented methods and the value of such uses, the Summary Judgment Order, industry practices and all other relevant facts. *See, e.g., Carnegie Mellon Univ. v. Marvell Tech. Gr., Ltd.*, 807 F.3d 1283, 1303-05 (Fed. Cir. 2015) (general background on hypothetical negotiation in context of CMU patented method claims). As a result, CMU contends that it is premature to order that the Covered Devices and Covered Simulators should be "excluded from the damages base for any reasonable royalty damages sought by CMU" as LSI asserts. Among other things, the royalty base is only one component of a reasonable royalty (rate being the other). The alleged infringement in this case relates to Defendants' use of the patented method claims, not simply the "supply" of Accused Devices. Defendants use the patented methods during their read channel platform research and development, where such use is not specific to any particular customer, including Seagate and/or HGST, and those uses are a prerequisite to Defendants' development of the Covered Devices and Covered Simulators. Defendants undertake read channel platform research and development based on the expectation that it will market its platform to all customers, but without knowing which customers may ultimately decide to buy customized derivatives of the Defendants' platform. Accordingly, CMU respectfully contends that the effect of the Summary Judgment Order on the damages analysis should be addressed through the parties' expert reports |

(Ex. 1 at 3.) Indeed, CMU's position that it is "premature to order that the Covered Devices and Covered Simulators should be 'excluded from the damages base for any reasonable royalty damages sought by CMU'" directly contradicts the position it has maintained throughout this case, as reflected in CMU's damages contentions, its acquiescence to LSI's arguments, and its express statements to the Court.

### 1. CMU's Position Contradicts Its Damages Contentions and Representations to the Court

CMU provided its 138-page Patent Local Rule 3-8 damages contentions in March 2019, and never sought to amend or supplement them. As discussed above, CMU included tables

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

reflecting its damages claim with and without products supplied to Seagate, evidencing CMU's acknowledgement that Seagate sales accounted for 65% of CMU's damages claim. (Ex. 2, Pl.'s Damages Contentions at 8.) Based on this concession, LSI requested permission to file an early summary judgement motion relating to Seagate's have made rights to narrow the case and facilitate meaningful settlement discussions. (D.I. 93 at 12-17.). In response, CMU "agree[d] that it is going to be an important issue in the case." (*Id.* at 17:15-16).

As discovery progressed, LSI soon learned that HGST also had a license to the asserted patents that included have made rights. Applying the same methodology used by CMU in its damages contentions, LSI asserted in its motion for summary judgment that its "have made" rights defense would "remove from this case the vast majority of revenue on which CMU relies as the damages base." (D.I. 145-4 at 1-2.) CMU did not dispute this point in its response. And even after the Court issued its OPSJ, CMU agreed at the recent September 29, 2020, hearing that the impact on its damages claim is significant.

Nevertheless, after acknowledging the impact of LSI's customers' have made rights on its damages claim for more than a year, CMU abruptly changed course when the parties met and conferred as directed by the Court's OPSJ. (D.I. 196 at 9.) Instead of complying with the Court's directive to confirm the precise impact of the OPSJ on its infringement case, CMU now seeks to disclaim its own damages contentions and get another bite at the apple, going so far as to suggest that the Court's order may have no impact at all on its damages claim:

- "[T]he effect of the Summary Judgment Order on the damages analysis should be addressed through the parties' expert reports." (Ex. 1 at 3.)
- "CMU is entitled to assess and account for any effect the Court's order may have on its damages claims in connection with expert discovery under any new scheduling order the Court issues. The Court's order does not encompass the effect of have made rights on damages theories, as that raises disputed issues of material fact." (Ex. 3, Verdini Dec. 4, 2020 Email at 6.)
- "How the Court's ruling and the identity of those Accused Devices affects the reasonably royalty and CMU's damages claim, if at all, will be the subject of expert testimony and was not addressed in the Court's order." (*Id.* at 9.)

LSI was of course taken aback by CMU's about-face, and questioned CMU as to its justification for contradicting its own damages contentions and representations to the Court. In response, CMU

simply stated that it did not recall the "with Seagate" v. "without Seagate" tables in its damages contentions, and refused to answer questions regarding them. CMU's tactics are nothing more than an attempt to undo the Court's ruling. CMU should be held to its own contentions and representations to the Court, and should not be permitted to sandbag LSI with a new, still-undisclosed damages theory that seeks to recapture sales to licensed customers.

### 2. The Court Already Rejected CMU's Arguments in the OPSJ

CMU also contends that, in developing devices later sold to Seagate and HGST—which indisputably *are* covered by LSI's implied license—LSI executed certain unspecified "Accused Simulators" that supposedly are *not* covered by the implied license. (Ex. 1 at 3.) However, CMU made the same argument in response to LSI's summary judgment motion (D.I. 149-4 at 21-23), and the Court explicitly found that CMU failed to raise a genuine issue of material fact on this issue in the OPSJ. (D.I. 196 at 9.)

Similarly, LSI explained in its opening brief that the implied license defense "exclude[s] from liability all allegedly infringing activities performed in connection with products supplied to [Seagate and HGST]." (D.I. 145-4 at 1-2.) CMU did not dispute this point in its response.

LSI also squarely addressed both the "Accused Devices" and "Accused Simulators" identified in CMU's Amended Local Patent Rule 3-2 Infringement Contentions ("Amended PICs"), noting that "there is no legal or factual basis to treat them differently, because any such simulations that were performed are within the scope of the 'making' of the purported inventions that CMU's licensees delegated to Defendants." (D.I. 145-4 at 6.) LSI pointed out that all "allegedly infringing pre-sale activities for which CMU claims damages—including the so-called "Accused Simulators"—occurred only after Defendants entered into development agreements and other contracts with the licensees to work closely with them to jointly develop and supply their custom products." (D.I. 145-4 at 22-23.) CMU did not dispute these points either.

In opposing the original summary judgment motion, CMU argued, as it does now, that "LSI's implied license defense cannot immunize its internal development of the Infringing Sequence Detectors before it offered or sold such detectors to Seagate or HGST." (D.I. 149-4 at 21-22.) CMU also argued then, as now, that "in a reasonable royalty calculation, subsequent non-

infringing sales to licensees can be used to value the prior, non-immunized acts of infringement that generated those sales." (Id. at 22.) CMU asserted that "have made rights do not immunize the uses LSI made of the claimed inventions to develop the Infringing Sequence Detectors before offering or selling them to Seagate and HGST, and the resulting sales are properly included in CMU's damages base." (D.I. 149-4 at 23.)

The Court considered those arguments, and held that they did not preclude summary judgment. In particular, the Court explicitly rejected CMU's "timing" argument, finding that CMU failed to identify any evidence that LSI "engaged in infringing practices before Seagate and HGST exercised their have made rights" during the damages period. (D.I. 196 at 9.) As the Court explained, "CMU speculates about possibilities, but does not raise a genuine issue of material fact based on evidence." (*Id*.) The Court recognized that pre-sale activities, including activities related to product development, are covered by a licensee's "have made" rights. (D.I. 196 at 7.)

CMU's current position effectively asks the Court to reverse its decision in the OPSJ. But the time for CMU to seek reconsideration has long since passed. *See* L.R. 7-9(a) (requiring leave of court to move for reconsideration); *Martin v. Biaggini*, No. 12-CV-06287-JD, 2014 WL 1867068, at *1 (N.D. Cal. May 7, 2014) (noting that movant must show "reasonable diligence"); *Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, No. 13-CV-02502-JD, 2015 WL 2063988, at *2 (N.D. Cal. May 4, 2015) (finding that four-week delay was not "reasonable diligence").

**B.  Accused Simulators Executed by or for Seagate and HGST During Development of Devices Are Covered by an Implied License**

| LSI's Proposal | CMU's Proposal |
|---|---|
| All Accused Simulators, except those for which simulation results are referenced in documents bearing Bates numbers LSI-04571-0083913 and LSI-04571-008996, identified in CMU's amended infringement contentions | The related Accused Simulators are the source code files listed on page 6 of CMU's Amended Infringement Contentions that were used, run, or executed during the period of September 1, 2011 through April 3, 2018 to mimic the operation of the detector of the Accused Devices identified in Exhibit A |

With regard to a list of "Accused Simulators," LSI's proposal follows the Court's directive to identify "which specific LSI products are covered by the have made rights." (D.I. 196 at 2.) CMU's proposal ignores the Court's OPSJ.

  Compliance with the Court's OPSJ first requires that the parties identify the universe of Accused Simulators at issue, and then divide that universe into specific ones covered by the implied license, and those not covered. Despite multiple invitations, CMU refused to engage in this process. CMU instead contends that the vague language it proffers is somehow sufficient to comply with the Court's OPSJ to create a "list" of "specific" Accused Simulators. *See e.g.*, Ex. 3, Verdini Dec. 4, 2020 Email at 8-9. In fact, however, CMU seeks to maintain ambiguity by leaving open the dispute as to which Accused Simulators "mimic the operation of the specific Accused Devices," so as to again "speculate[] about possibilities" regarding an unspecified set of Accused Simulators in a manner already rejected by the Court in OPSJ. (D.I. 196 at 8-9.)

  The lack of specificity in CMU's allegations with respect to Accused Simulators has been present since the onset of the litigation. By way of background, CMU contends that:

> Accused Simulators are computer-implemented detectors that Defendants used, ran or executed during the period of September 1, 2011 through April 3, 2018 that mimic the operation of any part of the detector of the Accused Devices or that simulate the operation of any part of an optimal or benchmark detector and that, in either case, is used to compute branch metric values by applying a set of branch metric functions to actual readback signal samples, i.e., signal samples from real waveforms captured from drives and/or spinstands.

(Ex. 3, Verdini 12/4/20 Email at 1.) However, this definition fails to articulate "specific" LSI Accused Simulators as directed by the Court. (D.I. 196 at 2.)

  CMU's Amended PICs are also nonspecific, and list source code files that CMU contends infringe if LSI "used, ran or executed" them (1) between September 1, 2011, and April 3, 2018, (2) using actual readback signal samples, i.e., signal samples from real waveforms captured from drives and/or spinstands. (*See* D.I. 145-8 at 5-6, 8.) To be clear, the source code files standing alone are not and cannot be accused of infringing the asserted method claims. The claim charts attached to the Amended PICs do little more than cite to about 20 documents that CMU contends reflect results from Accused Simulators (*i.e.*, executed simulations using real signals in the appropriate timeframe). (Ex. 4, Amended PICs Ex. B1 at 2-4, Ex. B2 at 2-4.) However, CMU asserts that such documents are only "representative samples" of CMU's infringement evidence. (Ex. 3, Verdini 12/4/20 Email at 11.) At no point since August 2019 has CMU sought to further amend or supplement the Amended PICs to specifically identify any Accused Simulators.

Nor has CMU specifically identified the allegedly infringing "Accused Simulators" in response to LSI's discovery requests. LSI served an interrogatory requesting a specific identification of Accused Simulators, and how they supposedly related to sales of Accused Products:

> For each Accused Product, identify with specificity the date and circumstances of each allegedly infringing simulation or other directly infringing use that CMU contends caused customer selection of the Accused Product, and/or volume sales of the Accused Product.

(Ex. 5, Suppl. Resp. to Defs.' 4th Interrogs. at 2.)  Even after the close of fact discovery, CMU refused to meaningfully respond. (*Id.* at 3-4).   Instead, CMU repeated the same vague and unspecific allegations it made in the Amended PICs, and cited 15 documents and multiple deposition transcripts that it contends show "infringing use."

Finally, during the meet-and-confer directed by the OPSJ, CMU again refused to identify specific "Accused Simulators," or provide a "list" of Accused Simulators covered (or, conversely, not covered) by the implied license under the OPSJ, and instead offered the following:

> CMU has identified substantial testimony and documents from discovery that establish LSI and its customers run the source code identified on Page 6 of CMU's Amended Infringement Contentions in connection with the development of *every* chip LSI sells.  Accordingly, CMU maintains its position that the proper identification of the Accused Simulators per the Court's order are those source code files listed on page 6 of CMU's Amended Infringement Contentions that mimic the operation of the specific Accused Devices that were supplied to Seagate and HGST during the damages period.

(Ex. 3, Verdini Dec. 4, 2020 Email at 7) (emphasis in original).  CMU's proposal confirms that CMU seeks to maintain the ability to "speculate[] about possibilities," rather than identify a "list" of "specific" Accused Simulators (*i.e.*, executed simulations using real signals within the damages window) as required by the Court's OPSJ.  (*See* D.I. 196 at 9.)

By contrast, LSI's proposed language in the stipulation is based on the documents cited in CMU's Amended PICs and interrogatory responses, which include two instances of allegedly infringing simulations (referenced in documents bearing Bates numbers LSI-04571-0083913 and

LSI-04571-008996), that are *not* covered by Defendants' implied license.[3]

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order adopting LSI's proposed language for the stipulation as set forth in Exhibit 1.

---

[3] Although Defendants reserve the right to argue that the Accused Simulators referenced in documents bearing Bates numbers LSI-04571-0083913 and LSI-04571-008996 are neither infringing nor a proper basis for damages, Defendants agree that they are not covered by the OPSJ.

Dated:  January 11, 2021

Respectfully submitted,

KING & SPALDING LLP

By:  /s/  *Steven J. Rizzi*
KENNETH L. STEINTHAL
(State Bar No. 268655)
ksteinthal@kslaw.com
KING & SPALDING LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:  (415) 318-1211
Facsimile:   (415) 318-1300

STEVEN JAY RIZZI (admitted *pro hac vice*)
srizzi@kslaw.com
RAMY HANNA (admitted *pro hac vice*)
rhanna@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 35th Floor
New York, NY 10036
Telephone:  (212) 556-2100
Facsimile:   (212) 556-2222

Attorneys for Defendants LSI CORPORATION and AVAGO TECHNOLOGIES U.S. INC.