Edward P. Sangster (SBN 121041)
edsangster@klgates.com
**K&L GATES LLP**
4 Embarcardero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8200
Fax: (415) 882-8220

*Counsel for Plaintiff*
*Carnegie Mellon University*

Kirk D. Dillman (SBN 110486)
kdillman@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:   (213) 694-1200
Facsimile:   (213) 694-1234

*Counsel for Defendants*
*LSI Corporation and*
*Avago Technologies U.S. Inc.*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>LSI CORPORATION AND AVAGO TECHNOLOGIES U.S. INC.,<br><br>Defendants. | Case No. 3:18-cv-04571-JD<br><br>**JOINT STATEMENT REGARDING APRIL 7, 2025 TRIAL** |

In accordance with the Court's instructions during the December 12, 2024 claim construction hearing, the Parties have met and conferred regarding the trial that the Court has set for April 7, 2025 (*see* Dkt. 245) and provide the Court with the following statements.

1

**Plaintiff's Statement**:

**Pretrial Proceedings**.  Plaintiff Carnegie Mellon University ("CMU") understands the Court's Standing Order for Civil Jury Trials to govern the jury trial set in Dkt. 245 ("mini-trial"), and to set forth, *inter alia*, the pretrial materials that the Court expects the Parties to file and the deadlines for those filings.

**Schedule and Request for Change of Trial Date**.  With regard to the April 7, 2025 mini-trial date, counsel for CMU also is counsel for the Regents of the University of Minnesota in a patent infringement case before Judge Davila in San Jose, California.  *See Regents of the Univ. of Minn. v. LSI Corp.*, et al., Case No. 5:18-cv-00821-EJD (the "UMN Case").  Judge Davila ordered trial in the UMN case to begin on March 25, 2025 and continue through April 4, 2025.  *See id.* at Dkt. 298.  Judge Davila typically takes trial testimony three days per week, so it is possible, if not likely, that the trial will extend beyond April 4.  The K&L Gates team for both the CMU trial and the UMN trial are identical and largely have been through the lives of both cases.  In light of this scheduling conflict, CMU respectfully requests that the Court continue the April 7, 2025 mini-trial to a date on or after April 28, 2025.  CMU submits that good cause exists for the continuance because, among other things, the pretrial and trial activities required for the UMN Case will not allow CMU and its counsel to adequately prepare for an April 7, 2025 mini-trial in this case.  In addition, even if trial concludes by April 4, jury deliberations in the UMN Case likely would begin at the earliest on that date, requiring CMU's counsel to be in San Jose at least on April 7, if not longer, for the jury verdict.  CMU does not request a continuance of the March 20, 2025 pretrial conference date, or of the corresponding pretrial deadlines set by the Court's Standing Order for Civil Jury Trials.

In Exhibit 1 attached hereto, Defendants (collectively, "LSI") have proposed an amended case schedule that includes, among other things, a mini-trial date of June 23, 2025.  CMU does not object to LSI's proposed mini-trial date but defers to the Court to set a continued mini-trial date.

2

CMU, however, objects to LSI's amended case schedule to the extent it provides that the Parties will file separate *Daubert* motions for the mini-trial. CMU does not believe that separate *Daubert* motions are warranted or needed; any evidentiary issues for the mini-trial, including objections to expert testimony, can be addressed in the pretrial filings, required by the Court's Standing Order for Civil Jury Trials, including, if appropriate, motions in limine with the Court's permission.

**Trial Scope**. The Parties' conferences also have included discussions on the intended scope of the mini-trial in light of the Court's orders. The relevant portions of the Court's orders on the subject follow, and CMU believes that they adequately define the scope of the trial such that the Parties can properly prepare:

> The determination of the exact simulators is subject to fact dispute not resolvable on summary judgment, and so will be determined at trial. The effect, if any, of LSI's non-infringing activities under the implied license on the calculation of a reasonable royalty is also a disputed question of fact that is poorly suited for summary judgment. *See, e.g., Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1303-05 (Fed. Cir. 2015). This too will be resolved at trial.

Dkt. 217.

> A jury trial is set for April 7, 2025, at 9:00 a.m. to resolve the disputed questions of fact re the identity, quantity, prices, and revenues of accused products covered by an implied license, the identity, quantity, prices, and revenues of accused products not so covered, and the portion of revenues reasonably claimed by plaintiff CMU for sales of uncovered products. *See* Dkt. Nos. 196, 217.

Dkt. 245.

The Parties agree that the "disputed question of fact" about "[t]he effect, if any, of LSI's non-infringing activities under the implied license on the calculation of a reasonable royalty," *see* Dkt. 217, is the principal issue as to which the Parties have disagreed in their attempts to resolve this case. Accordingly, it is critical that resolution of that disputed factual issue be resolved in any mini-trial if that mini-trial is to serve its intended purpose, and the Court's order at Dkt. 245 reflects that the trial is intended to address that issue.

**Response to LSI's Statement**. CMU provides the following response to LSI's Statement, which it provided for the first time late today:

1. CMU did not construe the Court's request for a joint statement regarding a mini-trial to be an invitation to relitigate the issues already decided by the Court in Dkt. 217, following extensive briefing. LSI's statement, however, seeks to do just that, asking the Court to disavow its prior ruling that "[t]he effect, if any, of LSI's non-infringing activities under the implied license on the calculation of a reasonable royalty is also a disputed question of fact that is poorly suited for summary judgment. … This too will be resolved at trial." Dkt. 217.

2. In any event, LSI is wrong on the merits. LSI attempts to avoid the inescapable conclusion that the Court's ruling at Dkt. 217 in fact comports with Federal Circuit law by pointing to *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398 (Fed. Cir. 2018) which was decided well before the Court issued its decision at Dkt. 217. LSI posits that *Enplas* categorically prohibits CMU's royalty base from accounting for "LSI's non-infringing activities under the implied license." LSI is incorrect. As an initial matter, *Enplas* does not consider have-made rights at all and so does not address the factual issue the Court described in Dkt. 217. Moreover, LSI significantly overreads the holding of *Enplas* as to damages. As the Federal Circuit explained just this year, "[t]he foundational principle is that 'the royalty due for patent infringement should be the value of what was taken—the value of the use of *the patented technology*.'" *Brumfield v. IBG LLC*, 97 F.4th 854, 876 (Fed. Cir. 2024) (emphasis in original). Indeed, the District Court of Delaware rejected the same "overbroad" interpretation that LSI now espouses, explaining that *Enplas* excluded a royalty base that contained "functionally unrelated, non-overlapping products" because "sale of the infringing product [there] does not 'enable[] and is [not] needed to enable otherwise-unavailable profits' resulting from the non-infringing product." *IPA Techs., Inc. v. Microsoft Corp.*, 2024 WL 1962070 (D. Del. May 2, 2024) (quoting *Brumfield*,

4

97 F.4th at 877).  Unlike in *Enplas*, LSI's infringing activity here is **not covered** by the alleged implied license, but enables, and is needed to enable, the otherwise unavailable sales to all of LSI's customers (including those with have made rights), and consequently, the sales enabled by non-covered infringing activity (the subject of which will be decided at the mini-trial) are an appropriate metric for valuing the infringing use of the patented technology.  And that is the key issue because the Patent Act entitles successful patentees to recover "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty ***for the use made of the invention*** by the infringer."  35 U.S.C. § 284 (emphasis added).  Although *Brumfield* and *IPA Techs.* confirm the correctness of the Court's ruling in Dkt. 217, CMU respectfully incorporates its prior brief on this issue (Dkt. 215) and respectfully requests the opportunity to address any new concerns about it in more detail should the Court desire more detailed briefing.

    3.    As discussed at the hearing on December 12, 2024, the Court plainly contemplated taking fact and expert testimony at the mini-trial.  *See* Hearing Transcript at 70-72 (speaking on witnesses, "[b]ring in anyone you want," specifically including experts).  CMU expects that it could address the issue framed above, with fact and expert testimony, in three days.   Any ruling precluding such testimony will deny CMU a right to a jury trial on what the Court already has determined to be a disputed issue of fact (*see* Dkt. 217).

    4.    This Court has broad discretion to try issues separately under Fed. R. Civ. P. 42(b), and in whatever order it deems appropriate.  *Danjaq LLC v. Sony Corp*, 263 F.3d 942, 961 (9th Cir. 2001).  Trying damages first is permissible.  *See, e.g.*, *Cocina Cultura LLC v. State*, No. 3:20-cv-01866-IM, 2021 WL 3836840, at *10 (D. Or. Aug. 27, 2021)("It would serve no purpose to spend the parties' and this Court's resources and time determining liability and then, if there is liability, determining damages.");  *Ligus v. U.S.*, 2020 WL 736243 at *3 (D. Ala. Feb. 13, 2020)

("The [Defendant] has not identified any caselaw which restricts a court to only ruling on the elements of [Plaintiff's] claim in the order they might appear in hornbook law….").

5. LSI identifies nothing more than an abstract fear of prejudice as the reason to move forward in a manner other than that already set out in the Court's orders. Certainly, the Court and the parties can take steps at trial to address this abstract concern.

6. Finally, and most importantly, leaving the issue framed by Dkt. 217 to be resolved only at the trial set for October, and instead using the mini-trial only to address the myopic scope Defendants demand, will not advance the parties' settlement discussions because resolution of the factual issues identified in Dkt. 217 constitute the primary barrier to settlement, as was discussed with the Court at the December 12 hearing. *See* Hearing Transcript at p. 70 (counsel for LSI acknowledging that this is the critical issue).

**Defendants' Statement**[1]:

Should CMU be able to argue to a jury that that it is entitled to reasonable royalty damages on activity that the Court has already ruled is licensed, and thus non-infringing as a matter of law? Defendants submit that the answer is clearly "no," because "a reasonable royalty 'cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 411-12 (Fed. Cir. 2018) (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015)). Yet that is precisely what CMU seeks to accomplish in the mini-trial by misconstruing the Court's conclusion that assessment of potential patent damages implicates fact issues (Dkt. No. 217). However, the Court's ruling in no way authorized CMU to flout the law by

---

[1] CMU attempts to excuse the weakness of its positions by insinuating that Defendants provided their statements "late today." However, CMU ignores that the parties engaged in days of telephonic and email meet and confers where the parties laid out their positions in detail and agreed to share drafts of their sections this afternoon.

6

recasting – and recapturing -- non-infringing sales under the guise of "damages-measuring acts" as CMU contends, "because ***acts that do not constitute patent infringement cannot provide a proper basis for recovery of damages under section 284***." *Enplas*, 909 F.3d at 411-12 (quoting *Gjerlov v. Schuyler Laboratories, Inc*., 131 F.3d 1016, 1024 (Fed. Cir. 1997); emphasis added). LSI thus disagrees that whether LSI's licensed activities may be included in CMU's purported damages base is a disputed question of fact to be resolved by a jury.[2] Indeed, CMU's reliance on, the non-precedential district court decision in *IPA Techs., Inc. v. Microsoft Corp.*, 2024 WL 1962070 (D. Del. May 2, 2024), and the causation requirement for recovering damages on foreign activities articulated by *Brumfield v. IBG LLC*, 97 F.4th 854, 876 (Fed. Cir. 2024) highlights that the Court should resolve these questions of law, whether through *Daubert* or other briefing, prior to handing the "damages" case to a jury in the "mini-trial," as CMU advocates. Indeed, it is telling that the Federal Circuit decision in *Enplas* has not been overruled. And CMU's attempt to distinguish it by stating that the case did not deal with a "have made" rights issue only skews the outcome in Defendants' favor. Not only is the activity CMU seeks to pursue as a basis for damages a non-infringing act (since the sales of the products cannot infringe the method claims asserted), but it also seeks to recover on products that can never be infringing as they are protected by an implied license during the course of their development and sale.

Defendants LSI Corp. and Avago Technologies U.S. Inc. (collectively, "LSI") set forth below their position as to the proper scope and suggested timing for the mini-trial ordered by the Court.

1. The Scope of the Mini-trial

---

[2] In *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd*., 807 F.3d 1283, 1303-05 (Fed. Cir. 2015), Marvell did not prevail on its implied license defense, and thus the Federal Circuit did not address this issue.

The parties have dramatically different views concerning the scope of the mini-trial contemplated by the Court based on its December 13, 2024, minute order (Dkt. No. 245) and its comments at the December 12, 2024, hearing.

LSI understands that the mini-trial is limited to resolving any remaining factual disputes concerning what accused products are covered/not covered by LSI's implied license, and the portion of LSI's revenues associated with non-covered products. This entails resolving two discrete, severable factual disputes: i) the identity and quantity of the "Accused Devices" and associated revenues not covered by LSI's implied license, and ii) the identity of any additional "Accused Simulators" not covered by LSI's implied license (other than those previously identified) associated therewith. "Accused Devices" and "Accused Simulators" are CMU-defined terms for the universe of accused instrumentalities at issue in the case. Resolution of these two issues will clarify precisely what remains of CMU's case, and thus facilitate settlement.

LSI anticipates that these two issues can be addressed through the testimony of 3-4 LSI fact witnesses, without the need for any expert testimony. This is consistent with the Court's December 13 order, which allows for no more than three trial days, and does not include dates for *Daubert* motions, as would be necessary if expert testimony is to be presented. *See, e.g., Open Text S.A. v. Box, Inc.*, No. 3-cv-04910-JD, 2015 U.S. Dist. LEXIS 8783 (Jan. 23, 2015) (excluding proposed opinions of plaintiff's damages expert after *Daubert* hearing).

In contrast, CMU's proposed mini-trial would be a step backwards in terms of bridging the gap between the parties, because CMU seeks to use the mini-trial to contravene the Court's summary judgment order. Specifically, in an email from December 20, 2024, **CMU indicated that it intends to have its damages expert testify that the Court's summary judgment order had zero impact on its damages claim, and ask the jury to conclude that each and every one of the nearly**

***one billion licensed products should be included in its damages claim.*** In other words, CMU wants to use the mini-trial to ***undo the Court's summary judgment ruling***.

It would be an understatement to say that CMU's position is untenable. Having conceded that LSI's implied license defense was an "important issue" in the case at the conference on April 18, 2019 (Dkt. No. 93 (transcript) at 15:15-16), and losing handily in its attempt to defeat the defense (Dkt. No. 196 at 7 ("The arguments CMU makes against an implied license are not well taken")), CMU should not now be heard to defy the Court's ruling by arguing to the jury that LSI's implied license has no impact on its potential damages in this case. Needless to say, proceeding as CMU proposes would not facilitate settlement.

To make matters worse, CMU seeks to convert the mini-trial into what would effectively be a damages trial to adjudicate the "royalty base" for the $.50 per chip royalty sought by CMU (Dec. 12, 2024 hearing transcript at 68:3), which is wholly unworkable and highly prejudicial to LSI for numerous reasons.

• First, a damages trial before a finding of liability is inherently prejudicial to LSI. Damages are tried with or after a liability trial because damages are based on "the use made of the invention by the infringer." 35 U.S.C. § 284. CMU's position would require the Court to instruct the jury to assume infringement in the abstract, which would be highly prejudicial as it would place LSI in the negative light of being an adjudicated infringer. LSI is unaware of any precedent for trying damages issues before liability, and there would be no way to mitigate the prejudice to LSI. In this regard, Fed. R. Civ. Proc. 42(b) addresses separate trials, and explicitly indicates that one purpose of separate trials is "to avoid prejudice." Indeed, the cases CMU cites to support its desire for trying damages before liability highlight the weakness of CMU's position. *Cocina Cultura LLC v. State*, No. 3:20-cv-01866-IM, 2021 WL 3836840, at *10 (D. Or. Aug. 27, 2021) is a non-patent case where the ***Defendant*** requested a trial on damages, stating that "[a]s soon as damages are

9

determined, Defendants state they 'would pay immediately,' which would moot the case before the liability stage." In other words, liability was never going to be tried. Worse yet, *Ligus v. U.S.*, 2020 WL 736243 at *3 (D. Ala. Feb. 13, 2020), is another non-patent case that did not even deal with trial sequencing or bifurcation. Instead, the Court was ruling on a summary judgement motion stating, "[plaintiff's] motion is GRANTED as to the fact that, assuming she proves the United States was negligent, that her injuries would entitle her to non-economic and economic damages."

Here, in addition to not helping bridge the gap between the parties, the separate trial CMU seeks would **cause prejudice** that would not be present in a single trial.

- Second, trying the damages case as CMU proposes would also require instructing the jury to accept CMU's damages theory, *i.e.*, that damages should be measured based on a use-based (per product) royalty, which again is prejudicial to LSI. LSI's position is that damages are properly determined based on a lump sum amount, and not a per unit amount applied to a "royalty base." In other words, CMU seeks to deprive LSI the opportunity to advocate its position that a lump sum royalty is the appropriate measure of damages in the event any infringement of a valid patents is found.

- Third, it would cause incurable prejudice to LSI to inform the jury at the main trial of any advisory damages-related findings the jury in CMU's proposed "mini-trial" may reach.

- Fourth, even if damages issues could properly be tried before liability (they cannot for the reasons described), because CMU's "royalty base" contentions cannot be tried in isolation, the trial CMU contemplates would require much more than three days. Most or all of the *Georgia Pacific* factors[3] would need to be addressed, including explanations of the technology at issue and

---

[3] *See Open Text S.A. v. Box, Inc.*, No. 3-cv-04910-JD, 2015 U.S. Dist. LEXIS 8783 (Jan. 23, 2015) (discussing expert opinions concerning reasonably royalty analysis under the 15 *Georgia-Pacific* factors).

10

its purported advantages, testimony concerning the parties' licensing postures and practices, and the history of interactions between the parties. *Carnegie Mellon Univ. v. Marvell*, 807 F.3d at 1303-05. Another "important consideration[]" is the "extent of use" of the patented subject matter, which necessarily implicates testimony on liability issues. *Id*. at 1304. In addition, it would be necessary to address territoriality issues surrounding sales of Accused Devices. Trying all these issues would thus require testimony from most if not all of the fact witnesses and experts from both sides to testify at the mini-trial, which would defeat the purpose of the mini-trial.

2. <u>Scheduling for the Mini-trial</u>

As noted above, LSI respectfully submits that experts are not required for the mini-trial, and that the trial should be limited to the testimony of 3-4 LSI fact witnesses. In this case, LSI has no objection to the dates set forth in Dkt. No. 245 for the pretrial conference and trial. LSI's undersigned counsel have a trial scheduled for March 3-7, 2025 in the District of Delaware in *Robocast, Inc. v. Netflix, Inc.*, C.A. No. 22-305-JLH-CJB, and thus respectfully request that the deadline for submission of the pretrial order be set to March 13, one week before the pretrial conference. LSI further understands that CMU's counsel has a conflict with the April 7, 2025, trial date, and has no objection to moving that date to April 28 or later as CMU requests, which would also resolve LSI's March 3-7, 2025, conflict. Apart from this conflict, LSI also has no objection to scheduling pretrial exchanges in accordance with the Court's Standing Order for Civil Jury Trials.

Should the Court allow expert testimony, LSI respectfully requests that the Court adjust the schedule to allow for Daubert motions.[4] This is especially critical given that CMU has indicated it intends to have its expert that licensed products may be included in its royalty base, which is contrary to law as noted above.

---

[4] To be clear, LSI also reserves the right to move to strike any opinions in CMU's expert reports not properly disclosed in CMU's infringement or damages contentions.

11

A proposed revised schedule including *Daubert* motions is attached as Exhibit 1 for the Court's consideration. CMU has indicated that it does not object to LSI's proposed revised trial date, but indicated that it opposes separate *Daubert* briefing for the mini-trial. CMU also suggested that *Daubert* issues could be raised as motions in limine, but this directly contradicts the Court's standing order, which provides that such motions "are not substitutes for . . .motions to exclude expert testimony." Standing Order for Civil Jury Trials Before Judge James Donato at 3.

LSI's undersigned counsel is available at the Court's convenience to further address the scope and timing of the proposed mini-trial.

Date: December 23, 2024

Respectfully submitted,

/s/ Christopher M. Verdini

Edward P. Sangster (SBN 121041)
ed.sangster@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel: (415) 882-8200
Fax: (415) 882-8220

Patrick J. McElhinny, pro hac vice
patrick.mcelhinny@klgates.com
Mark G. Knedeisen, pro hac vice
mark.knedeisen@klgates.com
Christopher M. Verdini, pro hac vice
christopher.verdini@klgates.com
Anna Shabalov, pro hac vice
anna.shabalov@klgates.com
**K&L Gates LLP**
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
(412) 355-6500

Theodore J. Angelis, pro hac vice
theo.angelis@klgates.com
**K&L Gates LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580

*Counsel for Plaintiff*
*Carnegie Mellon University*

Respectfully submitted,

/s/ Steven Rizzi

Steven Rizzi (admitted *pro hac vice*)
srizzi@McKoolSmith.com
**MCKOOL SMITH, P.C.**
1301 6th Avenue, 32nd floor
New York, NY 10019
Telephone: (212) 402-9400
Fax: (212) 402-9444

*Counsel For Defendants*
*LSI Corporation and Avago*
*Technologies U.S. Inc.*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the Electronic Service List for this case.

*/s/ Christopher M. Verdini*