Erik J. Halverson (SBN 333492)
erik.halverson@klgates.com
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8200
Fax: (415) 882-8220

*Counsel for Plaintiff*
*Carnegie Mellon University*

Kirk D. Dillman (SBN 110486)
kdillman@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:    (213) 694-1200
Facsimile:    (213) 694-1234

*Counsel for Defendants*
*LSI Corporation and*
*Avago Technologies U.S. Inc.*

[Additional counsel on signature page]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,<br><br>                              Plaintiff,<br><br>    v.<br><br>LSI CORPORATION AND AVAGO TECHNOLOGIES U.S. INC.,<br><br>                              Defendants. | Case No. 3:18-cv-04571-JD<br><br>**PARTIES' REVISED [PROPOSED] JURY VERDICT FORMS**<br><br>Hon. James Donato<br>Trial Date: May 5, 2025 |

Pursuant to the Court's April 16, 2025 Pretrial Order (Dkt. 282 at ¶ 12), Plaintiff Carnegie Mellon University ("CMU") and Defendants LSI Corporation and Avago Technologies U.S. Inc. (together, "LSI"), by their undersigned counsel, hereby respectfully submit their proposed verdict forms. The parties' respective proposed verdict forms are attached hereto as Exhibits A and B. Despite the parties' efforts to reach agreement on the verdict form, the parties have not agreed on a joint verdict form.

The parties respectively set forth a summary of their positions on the verdict forms below. The parties expressly reserve the right to amend and supplement their respective proposed verdict forms in response to the parties' continuing effort to reach agreement on the same, the discussions among the parties, any further pretrial rulings and the actual evidence to be offered at trial.

**Plaintiff's Position:**

CMU's proposed verdict form takes precisely the form the Court expressly and repeatedly directed the parties to adopt at the April 16, 2025 pretrial conference:

> We're going to answer [CMU's] question: Has CMU shown by a preponderance of the evidence that LSI used accused simulators with real drive waveforms for non-customer-specific internal development work; and the same for Western Digital and Toshiba. That's what we're doing. Okay? Those are [CMU's] questions. We're going to answer your questions for you.
>
> … [W]e are going to trial on May 5th, and we're going to walk out of here with a verdict that says these are the answers to those questions I've just raised.
>
> … [S]ee and use questions in Docket 272 at page 9 [CMU's original proposed verdict form]. Questions 1 through --- 1 through 4 seem workable. You know, do that.

Transcript at 8, 15.

LSI, meanwhile, studiously ignores those clear instructions from the Court and instead continues to push the factually and legally untenable position it has maintained throughout the pretrial proceedings and which, if adopted, would result in reversible error. *See, e.g.*, *United States v. Reed*, 147 F.3d 1178, 1180 (9th Cir. 1998) (stating "[v]erdict forms are, in essence, instructions to the jury" in deciding standard of review for use of special verdict form over objection). Specifically, LSI persists in demanding that the jury answer an eight (8) question special verdict form with a maze of improper questions that include asking the jury to identify the supposed "source" of the real signal used (which is not relevant under any conceivable scenario) and suggesting that the jury may rely *only* on documentary evidence to support their verdict by requiring the jury to specifically identify exhibits upon which their verdict presumably relies. LSI knows it does not track simulations in a way that would even allow the jury to properly make the identification LSI seeks to impose on the jury (and CMU) and also knows that suggesting this type of quantum proof is contrary to the law.

***Factually***, LSI admits that "LSI does not maintain logs identifying when simulations are executed, the file used to run the simulation, or the type of signal (real v. synthetic) that is used in each simulation." Dkt. 216 at 11 n.4. Yet, LSI pretends that the jury cannot find simulator use generally based on the PowerPoint presentations and testing reports LSI has produced in this litigation, coupled with its witnesses' own consistent testimony on such simulations that evidences LSI's routine pattern and practice of running infringing simulations, and instead must point to

documentary evidence to substantiate each particular use. *Legally*, the Federal Circuit has held that "we have never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence. Such a strict requirement could create a hypothetical negotiation far-removed from what parties regularly do during real-world licensing negotiations." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1334 (Fed. Cir. 2009).

CMU's proposed form does all that is necessary to move forward to another stage of the case with its claims that LSI used simulators for the benefit of customers without have made rights. On the other hand, the precise identification and quantification LSI's proposed verdict form demands goes well beyond what CMU is required to prove to eventually establish infringement and damages and well beyond what a jury should reasonably be asked to find. Indeed, were this a full trial on the merits, there likely would be a single question put to the jury focused on whether CMU has proven infringement. And LSI's own damages expert has admitted that the exact identification and quantification in LSI's proposed forms is not pertinent to the damages analysis in this case (a point on which he is in agreement with CMU's damages expert). Rather, the parties' ultimate dispute centers on the royalty that LSI would have paid not only to conduct infringing simulations but also to sell chips that perform CMU's patented methods—CMU's proposed verdict form provides legally supported and relevant input to whether a certain subset of infringing acts occurred and the Court has specified that the effect of those acts in light of the ruling at Dkts. 196 and 217 is reserved for the main trial.

Unlike LSI's proposed approach (which asks the jury to perform the impossible and legally unnecessary task of considering only simulator use corresponding to a specific document), CMU's proposed approach accords with the law and the facts.

**Defendants' Position:** At the outset of the pretrial conference on April 16 the Court stated that the mini trial would address what is essentially Defendants' proposed question 1, which is critical to moving the parties closer to a resolution: "[A]ll we're doing is answering a couple of questions along the lines of: What simulations did LSI use with the accused simulators that involved the use of a Real Signal and -- between September 2011 and April 2018; and of those simulations that were run, which were not in connection with the development or testing of devices for Seagate or HGST?" Tr. at 4:3-8. The Court reiterated this direction at the end of the conference, i.e., the purpose of the mini trial is to create a "count" of real signal simulations not in connection with development or testing for Seagate or HGST. Id. at 39: 17-40:2 ("That's what we're doing. Yeah.")  And in providing guidance specifically as to how the parties should "start fresh" with the verdict form, the Court stated: "[A]sk, basically fact interrogatory questions. Just, you know how many – how many times did LSI directly infringe. . .Indirectly infringe." Id. at 35: 11-25 (""We're adding up the universe of bad acts from the plaintiff's point of view, . . .all acts of infringement, direct or indirect.")

  Defendants' modified proposed verdict form closely tracks the Court's guidance. Proposed question one asks for a specific count of the total number of acts of alleged direct infringement remaining at issue (real waveform simulations by LSI not in connection with the development or testing of devices for Seagate or HGST) that CMU has proven. Question two then asks the jury to identify such acts however they can, such as approximate date, the real signal (waveform) used for the simulation, and exhibits pertaining to the simulation. Questions three and four simply parse the information provided in question two between Toshiba and Western Digital, Defendants' two customers in the relevant time period that are not addressed in the Court's summary judgment ruling on have made rights. Questions three and four are important to provide clarity for the main trial as to which remaining acts of alleged direct infringement are associated with which customer.

  Defendants' proposed questions 5-8 all pertain to acts of potential indirect infringement associated with LSI's provision of simulators to customers who used them to perform their own real signal simulations that allegedly infringe.  There are two questions for each of Toshiba and Western Digital – one to quantify and one to identify the simulators provided to each.

CMU's proposed verdict form largely ignores the Court's direction. CMU's proposed questions one and two not only fail to request either identification or quantification of remaining acts of alleged direct or indirect infringement, but also ignore the Court's order that simulations performed in connection with developing devices for Seagate or HGST are licensed. Dkt. 217. CMU's question one also asks the jury to revisit CMU's contention already rejected by the Court, *i.e.*, that "non-customer-specific internal development work [occurred] in the United States between September 1, 2011 and April 3, 2018" that is not covered by LSI's have made rights defense. The Court's summary judgment decision disposed of these issues, ruling that customization is not required as a matter of law, and that CMU did not raise a genuine issue of material fact with respect to its contention that infringement occurred during internal development work prior to Seagate and HGST's exercise of their have made rights. D.I. 196 at 8-9.

CMU's proposed question three is similarly not helpful because it fails to request identification or quantification of either the "accused simulators" or the real signal simulations run by the customers with those simulators. It thus does nothing to provide the required "count" of potential remaining acts of indirect infringement. And like CMU's proposed question two, it also fails to separate out acts associated with Toshiba v. Western Digital.

CMU's proposed question four seeks a wholly improper "finding" that "the number of uses of accused simulators by defendants or their customers cannot be quantified to an exact number." This question is both irrelevant and prejudicial. The jury's role is to identify and quantify the "universe of bad acts" that remain in play. And there is no dispute that CMU bears this *affirmative* burden by a preponderance of the evidence. A "yes" answer to CMU's proposed question framed in the *negative* proves nothing. Put simply, if CMU does not meet its burden with respect to an alleged act of infringement, it should not be counted. The only purpose behind the question is for CMU to argue that it should somehow be relieved of its burden under the law to prove specific acts of infringement. But CMU chose to wait 15 years from the date it suspected infringement to sue LSI, and to accuse acts (real signal simulations) that are not tracked by LSI in the ordinary course of its business as the centerpiece for its infringement allegations. The Court should reject what is effectively a request for a disguised adverse inference.

**EXHIBIT A – CMU'S PROPOSED VERDICT FORM**

When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form. Your answer to each question must be unanimous.

We, the jury, return these unanimous answers as our verdict in this case:

**Question No. 1**

Did plaintiff prove, by a preponderance of the evidence and in accordance with the instructions given to you, that defendants used accused simulators with real drive waveforms for non-HGST or non-Seagate work in the United States between September 1, 2011 and April 3, 2018?

\_\_\_\_ YES      \_\_\_\_ NO

**Once you've answered Question 1, continue to Question 2.**

**Question No. 2**

Did plaintiff prove, by a preponderance of the evidence and in accordance with the instructions given to you, that defendants used accused simulators with real drive waveforms for development work for Western Digital or Toshiba in the United States between September 1, 2011 and April 3, 2018?

\_\_\_\_ YES      \_\_\_\_ NO

**Once you've answered Question 2, continue to Question 3.**

**Question No. 3**

Did plaintiff prove, by a preponderance of the evidence and in accordance with the instructions given to you, that Western Digital or Toshiba used accused simulators with real drive waveforms for

simulating the read channel functions of Defendants' SoCs in the United States between September 1, 2011 and April 3, 2018?

\_\_\_\_ YES     \_\_\_\_ NO

**If you answered "Yes" to <u>any</u> of Questions 1, 2, or 3, continue to Question 4.**

**If you answered "No" to <u>all</u> of Questions 1, 2, and 3, stop here, answer no further questions, and have the presiding juror sign and date this form.**

**Question No. 4**

Did plaintiff prove, by a preponderance of the evidence and in accordance with the instructions given to you, that the number of uses of accused simulators by defendants or their customers cannot be quantified to an exact number?

\_\_\_\_ YES     \_\_\_\_ NO

You have now reached the end of the verdict form and should review it to ensure it accurately reflects your unanimous determinations. The Presiding Juror should then sign and date the verdict form in the spaces below and notify the courtroom deputy that you have reached a verdict. The Presiding Juror should retain possession of the verdict form and bring it when the jury is brough back into the courtroom.

Dated: _____    Signed:

_____
Presiding Juror

**EXHIBIT B – LSI'S PROPOSED VERDICT FORM**

When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form. Your answer to each question must be unanimous.

We, the jury, return these unanimous answers as our verdict in this case:

1.  How many, if any, Real Waveform Simulations has CMU proven, by a preponderance of the evidence and in accordance with the instructions given to you, were conducted by LSI in the United States between September 1, 2011 and April 3, 2018 that were NOT in connection with developing or testing products for one or both of **HGST** and **Seagate**? A "Real Waveform Simulation" is a simulation of the operation of read channel functions within the United States using a real waveform (also referred to as drive waveforms) between September 1, 2011 and April 3, 2018. Please indicate a specific number.

Number of Real Waveform Simulations: _____

2.  If the answer to question (1) is not zero (0), please identify each Real Waveform Simulation conducted by LSI in the United States between September 1, 2011 and April 3, 2018 that CMU has proven, by a preponderance of the evidence and in accordance with the instructions given to you, was NOT conducted in connection with developing or testing products for one or both of **HGST** and **Seagate**.[1] Identifying information can include approximate date of the Real Waveform Simulation, the real waveform used (e.g., "Toshiba waveform"), documents (identified by Exhibit number) showing or discussing results of such Real Waveform Simulation, or any other information the jury used to identify the Real Waveform Simulation.

|  | Date (or Approximate Date) | Real Waveform Used | Documents |
|--|--|--|--|
|  |  |  |  |

---

[1] For questions 2, 3, 4, 6 and 8, please notify the Court if you require additional sheets to provide a complete listing.

| | | | |
|---|---|---|---|
| Real Waveform Simulation 1 | | | Ex.__ |
| Real Waveform Simulation 2 | | | Ex.__ |
| Real Waveform Simulation 3 | | | Ex.__ |
| Real Waveform Simulation 4 | | | Ex.__ |

. . . &c

3. If CMU has proven, by a preponderance of the evidence and in accordance with the instructions given to you, that any Real Waveform Simulation(s) identified in response to question (2) were conducted specifically in connection with development or testing products for **Toshiba**, please identify them below.

| | Date (or Approximate Date) | Real Waveform Used | Documents |
|---|---|---|---|
| Toshiba Real Waveform Simulation 1 | | | Ex.__ |
| Toshiba Real Waveform Simulation 2 | | | Ex.__ |
| Toshiba Real Waveform Simulation 3 | | | Ex.__ |
| Toshiba Real Waveform Simulation 4 | | | Ex.__ |

. . . &c

4. If CMU has proven, by a preponderance of the evidence and in accordance with the instructions given to you, that any Real Waveform Simulation(s) identified in response to question (2) were conducted specifically in connection with development or testing products for **Western Digital**, please identify them below.

|  | Date (or Approximate Date) | Real Waveform Used | Documents |
|---|---|---|---|
| Western Digital Real Waveform Simulation 1 |  |  | Ex.__ |
| Western Digital Real Waveform Simulation 2 |  |  | Ex.__ |
| Western Digital Real Waveform Simulation 3 |  |  | Ex.__ |
| Western Digital Real Waveform Simulation 4 |  |  | Ex.__ |

. . . &c

5. How many, if any, Real Waveform Simulators has CMU proven, by a preponderance of the evidence and in accordance with the instructions given to you, were provided by LSI to **Toshiba** between September 1, 2011 and April 3, 2018? For purposes of this question, "Real Waveform Simulators" means hardware and/or software that: i) simulates the operation of read channel functions; <u>and</u> ii) was used by **Toshiba** to perform at least one Real Waveform Simulation in the United States between September 1, 2011 and April 3, 2018. Please indicate a specific number.

Number of Real Waveform Simulators provided to **Toshiba**: _____

6. If the answer to question (5) is not zero (0), then please identify each Real Waveform Simulator that CMU has proven, by a preponderance of the evidence and in accordance with the instructions given to you, LSI provided to **Toshiba** between September 1, 2011 and April 3, 2018 and was used by **Toshiba** to perform at least one Real Waveform Simulation in the United States between September 1, 2011 and April 3, 2018. Identifying information can include approximate dates the Real Waveform Simulator(s) were provided and the Real Waveform Simulation(s) performed by **Toshiba**, any documents (identified by Exhibit number) describing the Real Waveform Simulator(s) or Real Waveform Simulation(s), or any other information the jury used to identify the Real Waveform Simulator(s) or Real Waveform Simulation(s).

|  | Date (or Approximate Date) Real Waveform Simulator Provided | Date (or Approximate Date) Real Waveform Simulation Performed by Toshiba | Documents |
|---|---|---|---|
| Toshiba Real Waveform Simulator 1 |  |  | Ex.__ |
| Toshiba Real Waveform Simulator 2 |  |  | Ex.__ |

. . . &c

7. How many, if any, Real Waveform Simulators has CMU proven, by a preponderance of the evidence and in accordance with the instructions given to you, were provided by LSI to **Western Digital** between September 1, 2011 and April 3, 2018? Please indicate a specific number. For purposes of this question, "Real Waveform Simulators" means hardware and/or software that: i) simulates the operation of read channel functions; <u>and</u> ii) was used by **Western Digital** to perform at

least one Real Waveform Simulation in the United States between September 1, 2011 and April 3, 2018.  Please indicate a specific number.

Number of Real Waveform Simulators provided to **Western Digital**: _____

8. If the answer to question (7) is not zero (0), then please identify each Real Waveform Simulator that CMU has proven, by a preponderance of the evidence and in accordance with the instructions given to you, LSI provided to **Western Digital** between September 1, 2011 and April 3, 2018 and was used by **Western Digital** to perform at least one Real Waveform Simulation in the United States between September 1, 2011 and April 3, 2018. Identifying information can include approximate dates the Real Waveform Simulator(s) were provided and the Real Waveform Simulation(s) performed by **Western Digital**, any documents (identified by Exhibit number) describing the Real Waveform Simulator(s) or Real Waveform Simulation(s), or any other information the jury used to identify the Real Waveform Simulator(s) or Real Waveform Simulation(s).

|   | Date (or Approximate Date) Real Waveform Simulator Provided | Date (or Approximate Date) Real Waveform Simulation Performed by Western Digital | Documents |
|---|---|---|---|
| Western Digital Real Waveform Simulator 1 |   |   | Ex.__ |
| Western Digital Real Waveform Simulator 2 |   |   | Ex.__ |

. . . &c

You have now reached the end of the verdict form and should review it to ensure it accurately reflects your unanimous determinations. The Presiding Juror should then sign and date the verdict form in the spaces below and notify the courtroom deputy that you have reached a verdict. The Presiding Juror should retain possession of the verdict form and bring it when the jury is brough back into the courtroom.

Dated: _____     Signed:

                                                                     _____
Presiding Juror

Pursuant to the Court's April 16, 2025 Pretrial Order (Dkt. 282), Plaintiff Carnegie Mellon University ("CMU") and Defendants LSI Corporation and Avago Technologies U.S. Inc. (together, "LSI"), by their undersigned counsel, hereby respectfully submit the foregoing proposed verdict forms.

Dated:  April 24, 2025

/s/ Christopher M. Verdini
Erik J. Halverson (SBN 333492)
erik.halverson@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, California 94111
Tel: (415) 882-8200
Fax: (415) 882-8220

Patrick J. McElhinny, *pro hac vice*
patrick.mcelhinny@klgates.com
Mark G. Knedeisen, *pro hac vice*
mark.knedeisen@klgates.com
Christopher M. Verdini, *pro hac vice*
christopher.verdini@klgates.com
Anna Shabalov, *pro hac vice*
anna.shabalov@klgates.com
**K&L GATES LLP**
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Tel: (412) 355-6500
Fax: (412) 355-6501

Theodore J. Angelis, *pro hac vice*
theo.angelis@klgates.com
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Tel: (206) 623-7580

*Counsel for Plaintiff*
*Carnegie Mellon University*

Respectfully submitted,

/s/ Steven Rizzi
Kirk D. Dillman (SBN 110486)
kdillman@mckoolsmith.com
**McKool Smith, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
Telephone:     (213) 694-1200
Facsimile:     (213) 694-1234

Steven Rizzi (admitted *pro hac vice*)
srizzi@McKoolSmith.com
Mariel Talmage (admitted *pro hac vice*)
mtalmage@McKoolSmith.com
**MCKOOL SMITH, P.C.**
1301 6th Avenue, 32nd floor
New York, NY 10019
Telephone: (212) 402-9400
Fax: (212) 402-9444

Ramy Hanna (admitted *pro hac vice*)
rhanna@McKoolSmith.com
**MCKOOL SMITH, P.C.**
600 Travis Street, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Fax: (713) 485-7344

Sarah Hassan (admitted *pro hac vice*)
shassan@McKoolSmith.com
**MCKOOL SMITH, P.C**
1717 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 370-8300
Facsimile: (202) 370-8344

*Counsel for Defendants*
*LSI Corporation and Avago*
*Technologies U.S. Inc.*

**ATTESTATION UNDER CIVIL LOCAL RULE 5-1**

Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of these documents has been obtained from Mr. Rizzi.

Dated: April 24, 2025

*/s/ Christopher M. Verdini*
Christopher M. Verdini

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on April 24, 2025.

*/s/ Christopher M. Verdini*
Christopher M. Verdini